SUSAN PATTON, as Adm'r of the Estate of Susanne Patton, Deceased, *et al.*, Plaintiffs-Appellees, v. CARBONDALE CLINIC, S.C., Defendant-Appellant.

Fifth District   No. 5—91—0422

Opinion filed February 11, 1993.

Heyl, Royster, Voelker & Allen, of Peoria (Gary M. Peplow and Karen L. Kendall, of counsel), and Craig & Craig, of Mt. Vernon (Paul R. Lynch, of counsel), for appellant.

John P. Womick, of Womick & Associates, Chartered, of Carbondale, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

This is a medical malpractice case in which plaintiffs, Susan Patton, administrator of the estate of Susanne Patton, deceased, and Susan Patton, individually, alleged that employees of defendant, Carbondale Clinic, S.C., had negligently treated Susanne after an automobile accident, thus causing her death. At the conclusion of all the evidence, the circuit court of Jackson County directed a verdict for plaintiffs on the issue of liability. The jury then rendered a verdict in the amount of $700,000, as follows: $600,000 for loss of society; $18,598 for money, goods and services Susanne was likely to have contributed in the future; $75,000 for pain and suffering experienced by decedent; and $6,402 for funeral expenses. After trial, defendant moved for a setoff against the verdict in the amount of the previous settlements between plaintiffs and the automobile driver ($100,000) and plaintiffs and Ford Motor Company, the automobile manufacturer (plaintiffs and Ford agreed not to disclose the amount of the settlement). The trial court denied defendant's motion. In this appeal defendant raises the issue whether the trial court erred in denying defendant's motion for setoff from the previous settlements with the automobile driver and the automobile manufacturer. We affirm.

I

The facts of this case are relatively straightforward. On August 15, 1986, Susanne Patton, 15 years old at the time, attended a party with friends and on her way home was injured in an automobile accident. Susanne was a passenger in the automobile. She was taken to Carbondale Memorial Hospital emergency room immediately following the accident where she was examined by the emergency room doctor, Dr. Brotzman. Dr. Brotzman consulted with Susanne's pediatrician, Dr. Norman Geyer, who had treated Susanne for 15 years. Dr. Geyer was an employee of defendant herein. After consultation, Dr. Brotzman admitted Susanne to the hospital for overnight evaluation. At that time, Susanne had an elevated white blood count and blood in her urine. Her mother was concerned about taking her home in that condition.

While in the hospital, it was noted that Susanne had bruised the front portion of her lower abdomen. She had an elevated white blood count and experienced at least two incidents of vomiting. She had a

slightly elevated temperature and tenderness in her lower abdomen. A CT scan was performed to rule out the possibility of spinal injuries. It was negative.

Dr. Geyer checked on Susanne at approximately 8 a.m. on the morning of Saturday, August 16, 1986. Dr. Geyer also discussed Susanne's condition with a nurse at the hospital prior to Susanne's discharge at approximately 4 p.m. on that same date. Dr. Geyer testified that he was not informed of any second or third incident of vomiting. His decision to discharge was based upon negative X rays and the fact that Susanne was apparently feeling better. Dr. Geyer testified that had he known of any additional vomiting, he would have wanted to see Susanne prior to her discharge. Susanne was then discharged late Saturday afternoon and was scheduled for a follow-up visit with Dr. Geyer on Tuesday, August 19, 1986.

On Sunday, August 17, 1986, Susanne experienced several episodes of vomiting. Early Sunday evening, plaintiff, Susanne's mother, consulted with Susan Murray, a nurse at Carbondale Memorial Hospital, who was also the mother of Susanne's best friend. Susan Murray came to the Pattons' home at plaintiff's request. Murray checked Susanne's pulse and listened to her stomach with a stethoscope to see if she could hear any bowel sounds. She could not detect any bowel sounds. Murray then attempted to contact Dr. Geyer about Susanne's condition. She was unable to reach Dr. Geyer, ultimately called Carbondale Memorial Hospital, and spoke to Dr. Jan Meier, a family-practice resident, who had seen Susanne during her hospitalization. Dr. Meier told Murray she might need to bring Susanne in again, but that she would have to first consult another doctor. Murray was then called by Dr. Kathryn Churling, an employee of defendant and a pediatrician in practice with Dr. Geyer. Dr. Churling told Murray that if Susanne continued to vomit, she should be contacted immediately. Murray relayed this information to the Pattons and left.

On Monday, August 18, 1986, Dr. Churling informed Dr. Geyer that Susanne had other incidents of vomiting on Sunday, but Dr. Geyer did not contact the Pattons. Susanne's condition seemed to improve and the vomiting ceased on Monday. On Tuesday, August 19, 1986, plaintiff took her daughter to defendant pursuant to the hospital's discharge orders. Dr. Geyer immediately ordered that Susanne be taken to the hospital for emergency surgery. The surgery was performed by Dr. McCain. Dr. McCain performed a laparotomy and found a transected jejunum. The jejunum is the second portion of the small intestine. It had been completely separated. As a result of the transected jejunum, Susanne's intestinal contents spilled into her abdomi-

nal cavity and peritonitis developed. The jejunum was repaired during the operation. Susanne appeared to recover, but her condition worsened on Friday, August 22, 1986. She was then taken by helicopter to St. Louis Children's Hospital, where she died of septic shock.

Following Susanne's death, her mother, as administrator of her estate, filed suit in Williamson County against Andrew Zieba, the driver of the automobile in which Susanne was a passenger, and against Ford Motor Company, the manufacturer of the motor vehicle. The case against Zieba was settled for policy limits of $100,000 on July 30, 1987. The case against Ford was settled for an undisclosed amount on March 24, 1990. Suit was also filed against Williamson County but was ultimately dismissed. A separate suit naming Dr. Geyer, Dr. Meier, Memorial Hospital of Carbondale, and the Carbondale Clinic, as defendants, was filed in Jackson County. The case against Dr. Geyer was dismissed prior to trial. During trial, the case against Dr. Meier and Memorial Hospital was dismissed by plaintiffs.

Prior to trial, defendant, the Carbondale Clinic, S.C., and Dr. Geyer, prior to his dismissal, filed an affirmative defense denying liability but asking for a setoff because of the $100,000 settlement between plaintiffs and Zieba should a verdict against them be entered. No other affirmative defenses were filed either before or during trial. On March 29, 1990, plaintiff filed a motion for summary judgment on the issue of setoff. Prior to trial, plaintiffs also filed a motion *in limine* requesting an order "prohibiting the defendants from arguing or implying or eliciting testimony that would indicate or imply that the cause of Susanne's death was the automobile accident in which she was involved prior to the time she received medical care." Defendant did not object and the motion *in limine* was granted. The trial court also noted in its order that plaintiffs' motion for summary judgment on the issue of setoff was withdrawn without prejudice. Leave was granted to refile the motion at the end of the trial.

The case proceeded to trial in May 1990. On May 17, 1990, plaintiffs filed an amended complaint against defendant. Ultimately, the trial court directed a verdict in favor of plaintiffs on the issue of liability, and the jury awarded $700,000 in damages as previously described. After trial, on June 13, 1990, plaintiffs filed a brief in support of their motion for summary judgment on the issue of setoff. On June 15, 1990, defendant filed its answer to plaintiffs' amended complaint, including the affirmative defense of setoff with regard to plaintiffs' settlements with the automobile driver and the automobile manufacturer. On that same date, defendant filed a post-trial motion which requested, among other things, a setoff and reduction of judgment

based upon the settlements. Defendant asked the trial court to receive evidence concerning the amounts, terms and conditions of the settlements and reduce the $700,000 judgment by the amount of the settlements with the driver and the manufacturer or, in the alternative, the amount of settlements which the court determined to be compensation for the same injuries, damages and death which are the subject of this lawsuit. On May 15, 1991, the trial court entered an order denying defendant's post-trial motion. With regard to the setoff, the trial court specifically stated:

"The instant case involves separate and distinct injuries flowing from a car accident. There was a set of injuries occasioned by the collision itself which included a transected jejunum. There was [sic] separate and distinct injuries caused by the medical service providers' failure to diagnose the transected jejunum and the peritonitis which ultimately caused the death of the decedent. The collision and the injuries immediately attributable to the collision were kept separate and distinct from the injuries and suffering caused by the failure to diagnose. This can be seen in the manner in which the lawsuits were pled as well as in the way they were resolved or tried. The facts were kept as separate as the circumstances would allow. These were clearly separate and distinct causes of action. Therefore, each separate and distinct cause of action was subject to a separate and distinct claim for damages. The request for setoff and reduction is DENIED."

Defendant now appeals.

## II

The issue we are asked to address is whether the trial court erred in denying defendant's motion for setoff from the previous settlements with the driver and the automobile manufacturer. Defendant contends that the major flaw in the trial court's refusal to allow a setoff is its failure to recognize that wrongful death claims were brought by plaintiffs against not only the instant defendant, but also against the driver of the automobile and the automobile manufacturer. Defendant argues that it is unfair to require it to pay the entire amount of these wrongful death damages, most of which are for loss of society, when there are two other defendants, who both committed the original tortious act which caused Susanne's jejunum to sever. Defendant maintains that the accident which resulted in Susanne's jejunum being severed was the proximate cause of the peritonitis which ultimately caused Susanne's death and that it is entitled to a setoff of

the settlements between the driver and the manufacturer. Plaintiffs respond that the trial court correctly ruled that it was not severance of the jejunum which caused the peritonitis but rather the failure of the doctors to diagnose the severed jejunum which allowed the peritonitis to develop and ultimately caused Susanne's death. Plaintiffs contend that there are two separate and distinct injuries for which plaintiffs can recover and, in such a situation, setoff is improper. We agree.

■ The law is clear that if a doctor negligently treats a preexisting injury, he has committed a tort that is separate and distinct from the tort allegedly committed by the first wrongdoer. (*Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40; *Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 303 N.E.2d 146.) A person injured through another's negligence can recover for both the original injury and any aggravation of that injury caused by a treating physician's malpractice. (*Gertz v. Campbell*, 55 Ill. 2d 84, 302 N.E.2d 40; *Cram v. Showalter* (1986), 140 Ill. App. 3d 1068, 1072, 489 N.E.2d 892, 895, as modified on denial of rehearing.) In *Borowski*, an automobile accident victim brought an action against the automobile driver, the physicians who treated him and the hospital where he was treated. Prior to trial, the plaintiff settled his claim against the driver of the automobile for $30,000. The case proceeded to trial against the remaining defendants wherein the plaintiff alleged that the negligence of the defendants in treating his injuries was a proximate cause of the amputation of his left leg. The jury agreed with the plaintiff and returned a verdict of $200,000 for the plaintiff. In entering judgment on the verdict, the trial court reduced the amount of the verdict by $30,000, the amount of the settlement between the plaintiff and the automobile driver. Both the First District Appellate Court and our supreme court agreed that this $30,000 setoff was improper:

> "Since we have determined that the cause of action against the doctor and the cause of action against the auto driver are separate and distinct causes, each resting on its own elements of causation, if plaintiff had received a verdict against the doctor by using proper instructions, it would then have been improper to reduce that verdict by the amount received from the original tortfeasor. The plaintiff would have received two recoveries for two separate causes of action, and the reduction of one by the amount received from the successful conclusion of the other could not be sustained on any logical theory. Plaintiff would not have been compensated twice for the same injury because the recoveries would have represented compensation for

two separate injuries. 14 Ill. App. 3d 672, 690." (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 431-32, 328 N.E.2d 301, 309.) In the instant case, as in *Borowski*, there was no concert in the conduct of the automobile driver, the manufacturer and the treating physicians. Susanne was indeed injured in the automobile accident, but the record is clear that but for negligent treatment of her injuries she would still be alive today. We find the instant case most analogous to *Borowski* and, accordingly, follow its logic here.

■ Notwithstanding *Borowski*, defendant argues that plaintiffs have received double, possibly even triple recovery because here the injury recovered was for wrongful death. Defendant contends that setoff is necessary because a person can die only once. Defendant is correct that Illinois policy does not allow double recovery and that amounts paid by one or more joint tortfeasors are to be applied in reduction of damages recoverable from those remaining in the lawsuit. (*Popovich v. Ram Pipe & Supply Co.* (1980), 82 Ill. 2d 203, 412 N.E.2d 518.) But we must also consider the fact that Illinois public policy favors a peaceful and voluntary resolution of disputes through settlement. Because settlement with any defendant provides the remaining defendants with a setoff of the settlement amount, there is a temptation for defendants to be recalcitrant and to look to the other defendants to pay first with the hope that the first payors will reduce their eventual payment. (*Johnson v. Belleville Radiologists, Ltd.* (1991), 221 Ill. App. 3d 100, 108, 581 N.E.2d 750, 755.) Those remaining in the lawsuit may be rewarded for their stubbornness. We believe the procedural history and the manner in which this case was tried are extremely important to its outcome.

■ At trial, plaintiffs sought recovery for pain and suffering Susanne sustained after she received negligent treatment and for Susanne's death. The jury did not hear evidence concerning the accident itself; the evidence focused entirely on Susanne's treatment after the accident. Before trial, plaintiffs filed a motion *in limine* requesting that defendant be prohibited from arguing or eliciting testimony which would indicate or imply that the cause of Susanne's death was the automobile accident in which she was involved and which required her to seek treatment. Defendant did not object, and the motion was granted. At trial, all parties treated the injuries Susanne received in the automobile accident as separate and distinct from those received because of negligent medical treatment. Based on the procedural history of the case and how both parties tried the case, we conclude defendant's argument that it is entitled to setoff due to the settlements between plaintiffs and the driver and/or plaintiffs and the man-

ufacturer is without merit. As we have already stated, we conclude the injuries are separate and distinct. Moreover, to allow a setoff in a case such as this would be at odds with our State's policy favoring settlement agreements.

Defendant has cited numerous cases which it contends support its position. We have reviewed all authority cited by defendant and have found nothing to convince us that the trial court's analysis was incorrect. Most notably, defendant relies on *Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 494 N.E.2d 212. We, however, find the cases distinguishable. In *Fultz*, the plaintiff brought suit alleging that the defendant, a pharmacy, was negligent for filling his prescription with the wrong medication, that the doctor and clinic were negligent in providing medical treatment, and that defendant's negligent actions were the proximate cause of his illness and stroke. The jury returned verdicts for the plaintiff and against all the defendants. The trial court entered judgment against the defendant pharmacy in the amount of $1,689,641 reduced by 15% for contributory fault to $1,436,195 and against the defendants Dr. Peart and the clinic in the amount of $1,689,641. Subsequent to entry of judgment, the defendant pharmacy settled with the plaintiff for $330,101.05 in partial satisfaction of the judgment entered against it. The trial court refused to credit this sum in partial satisfaction of the judgment against the defendants Dr. Peart and the clinic. The defendants Dr. Peart and the clinic argued that a joint and several judgment should have been entered in the amount of $1,689,641 against all the defendants in order to prevent the plaintiff from receiving a double recovery and that they were further entitled to a setoff in the amount of $330,101.05. (144 Ill. App. 3d at 381, 494 N.E.2d at 224.) The *Fultz* court reversed the trial court's decision finding that the jury *intended* to establish one joint and several damage award in the amount of $1,689,641. The *Fultz* court also found that the defendants Dr. Peart and the clinic were entitled to have the judgment rendered against them set off in partial satisfaction for the amount paid by the defendant pharmacy. The *Fultz* case is distinguishable from the case at bar because in *Fultz* the plaintiff premised his case on the fact that the defendants were joint tortfeasors. All through the trial the plaintiff contended that the pharmacy, the doctor and the clinic were liable for the total damages resulting from his ultimate injury, a thrombotic stroke. The plaintiff's jury instructions as to the assessment of damages told the jury that each defendant was liable for the total extent of the plaintiff's damages. In entering the damage award the jury used identical figures in the various subcategories and was never instructed to apportion the

damages between the defendants based on any degree of relative fault. During closing, the plaintiff specifically asked the jury to find each defendant liable for the total injury. 144 Ill. App. 3d at 382, 494 N.E.2d at 225.

In the instant case, the jury heard no evidence concerning the alleged negligence of anyone other than the clinic. Plaintiff's theory of the case was that the injuries were separate and distinct and defendant did nothing to stop plaintiff from proceeding in this manner. Defendant did not object to plaintiffs' motion *in limine* requesting an order "prohibiting the defendants from arguing or implying or eliciting testimony that would indicate or imply that the cause of Susanne's death was the automobile accident in which she was involved prior to the time she received medical care." The case was tried in such a manner that the injuries for which plaintiffs sought recovery were multiple and divisible. As previously stated, the original tortfeasor and the subsequent physician tortfeasor are not joint tortfeasors and the injuries caused by each are separate and distinct. *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301, *aff'g* (1973), 14 Ill. App. 3d 672, 303 N.E.2d 146.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

CHAPMAN, P.J., and RARICK, J., concur.