(No. 75216.—

SUSAN PATTON, as Adm'r of the Estate of Susanne
    Patton, Deceased, Appellee, v. CARBONDALE
    CLINIC, S.C., Appellant.

*Opinion filed July 28, 1994.—Rehearing denied October 3, 1994.*

358

Heyl, Royster, Voelker & Allen, of Peoria (Gary M. Peplow and Karen L. Kendall, of counsel), and Craig & Craig, of Mt. Vernon (Paul R. Lynch, of counsel), for appellant.

John Womick, of Womick & Associates, Chrtd., of Carbondale, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Carbondale Clinic, appeals from an appellate court decision affirming the trial court's refusal to reduce plaintiff's jury verdict in the amount of previous settlements. (241 Ill. App. 3d 149.) We granted defendant's petition for leave to appeal (134 Ill. 2d R. 315) and now reverse.

### The Accident

Susanne Patton, a 15-year-old girl, was injured in an automobile accident on August 15, 1986. Susanne was a passenger in the vehicle driven by Andrew Zieba. After the accident, Susanne was brought to the Memorial Hospital of Carbondale emergency room where she was examined by Dr. Gregg Brotzman. Brotzman consulted with Susanne's pediatrician, Dr. Norman Geyer, defendant's employee, and Susanne was admitted overnight for evaluation. There was some concern because Su-

sanne had blood in her urine and an elevated white-blood-cell count. The accident had bruised Susanne's lower abdomen.

Susanne was released the next day, but was later readmitted for emergency surgery on August 19, 1986. At this time, it was discovered that Susanne had suffered a transected jejunum, the lower portion of the intestine, in the automobile accident. As a result, Susanne's intestinal contents had spilled into her abdominal cavity and peritonitis had developed. The jejunum was repaired, and Susanne appeared to recover. However, on Friday, August 22, 1986, Susanne's condition worsened, and she was transported by helicopter to St. Louis Children's Hospital, where she died of septic shock.

## Lawsuit #1: Plaintiff v. Zieba

On October 8, 1986, Susanne's mother (plaintiff), as administrator of her estate, filed suit against the driver of the automobile, Zieba, in Jackson County. In this suit, plaintiff alleged that Zieba negligently drove his car which "directly and proximately caused the death" of Susanne. The complaint alleged:

> "That as a direct and proximate result of said acts of negligence by ZIEBA, as alleged herein, the motor vehicle being operated by him skidded across and off the roadway and crashed into a tree all of which resulted in the death of Suzanne [sic] Patton ***."

Plaintiff's complaint sought recovery for Susanne's death under the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, pars. 1 through 2.2), for pain and suffering sustained by Susanne, and for expenses under the family expense act (Ill. Rev. Stat. 1985, ch. 40, par. 1015).

Plaintiff settled with Zieba on July 30, 1987, for the limits of his automobile insurance policy, $100,000. The settlement stated that it was "for the personal injuries and/or wrongful death or other damages incurred and

resulting from the death of the said Susanne Patton." The settlement also stated that it released Zieba and his insurer "for any and all claims, causes of action, demands, damages, costs, expenses and claims for loss of services or personal injuries and/or wrongful death, and any damages flowing therefrom, either contractual or in tort." The parties did not allocate the money received from the settlement as to the various causes of action. The trial court found the settlement was made in good faith and dismissed plaintiff's action against Zieba on July 30, 1987.

Lawsuit #2: Plaintiff v. Ford

Plaintiff filed a second lawsuit against Williamson County and its superintendent of highways, on September 1, 1987, in Williamson County. Plaintiff later added Ford Motor Company, the maker of the automobile, to this suit on August 11, 1988, and later dismissed all other defendants. In the complaint against Ford, plaintiff alleged:

"6. That as a result of said collision Susanne Patton was thrown forward, but was held by the lap seat belt which injured her stomach, caused her bowel to be perforated, and caused her death;

7. That the injuries and death of Susanne Patton were directly and proximately caused by the unreasonable dangerous condition of the motor vehicle in which Susanne Patton was a passenger."

The complaint against Ford sought to recover for Susanne's death under the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, pars. 1 through 2.2), for pain and suffering under the Survival Act (Ill. Rev. Stat. 1985, ch. 110$^{1}$/2, par. 27—6), and for medical and burial expenses under the family expense act (Ill. Rev. Stat. 1985, ch. 40, par. 1015).

Plaintiff settled with Ford for an undisclosed amount on March 24, 1990. The release provided in pertinent part:

"WHEREAS [plaintiff] has claimed that said accident caused injuries to Susanne, which injuries preceded her death; and

WHEREAS, subsequent to said accident, Susanne Patton received negligent medical care at Carbondale Memorial Hospital from employees of said hospital, and from employees of the Carbondale Clinic; and

WHEREAS, [plaintiff] desires to enter into a settlement agreement with Ford Motor Company for the injuries which [plaintiff] claims was [sic] caused by the accident and further desires to maintain her pending litigation against the parties and entities who she alleges negligently treated Susanne after her injury and prior to her death; and

WHEREAS, [plaintiff] maintains that the parties and entities which committed malpractice are not joint tort-feasors with any other alleged tort-feasor; and

WHEREAS, [plaintiff] *** agrees to release any claim she may have against Ford Motor Company for the injuries which she alleges were caused by Ford Motor Company, and desires to and intends to pursue her cause of action against the parties and entities whom she claims committed malpractice and in so doing aggravated the injuries she alleges were caused initially by Ford, and ultimately, through said malpractice, caused the death of Susanne Patton ***."

The agreement released Ford "from any and all liens, actions, causes of action, claims, demands, and damages *** arisen, arising, or to arise from injuries sustained by Susanne Patton on August 15, 1986" as a result of the automobile accident. The trial court found this settlement was made in good faith and dismissed plaintiff's action against Ford on April 4, 1990.

Lawsuit #3: Plaintiff v. Defendant

Plaintiff filed the instant suit in Jackson County against defendant, Dr. Geyer, Dr. Jan Meier, an employee of defendant, and Memorial Hospital of Carbondale on February 5, 1988. In this suit, plaintiff sought to recover for Susanne's death under the Wrongful Death

Act, for Susanne's pain and suffering under the Survival Act, and for medical and burial expenses under the family expense act. Drs. Geyer and Meier and Memorial Hospital of Carbondale were later dismissed from the suit.

Prior to trial, on April 7, 1988, defendant filed an affirmative defense denying liability but asking for a setoff in the amount of $100,000, the amount plaintiff received in the Zieba settlement, in the event a verdict was entered against defendant. This motion was later withdrawn without prejudice. Also, prior to trial, plaintiff filed a motion *in limine* requesting the court to prohibit defendant from arguing or presenting evidence that the automobile accident was the cause of Susanne's death. Defendant did not object to the motion and the trial court granted the motion.

The matter proceeded to trial in May 1990, and the trial court directed a verdict against defendant on the issue of liability. The jury then awarded plaintiff $700,000 in damages as follows: $600,000 for loss of society; $18,598 for money, goods and services Susanne was likely to have contributed in the future; $75,000 for Susanne's pain and suffering; and $6,402 for funeral expenses.

After trial, on June 15, 1990, defendants filed a post-trial motion requesting a setoff and reduction of the judgment based on the settlements with Zieba and Ford. The trial court denied a setoff and stated:

"The instant case involved separate and distinct injuries flowing from a car accident. There was a set of injuries occasioned by the collision itself which included a transected jejunum. There was [*sic*] separate and distinct injuries caused by the medical service providers [*sic*] failure to diagnose the transected jejunum and the peritonitis which ultimately caused the death of the decedent. The collision and the injuries immediately attributable to the collision were kept separate and distinct from the

injuries and suffering caused by the failure to diagnose. This can be seen in the manner in which the lawsuits were pled as well as in the way they were resolved or tried. The facts were kept as separate as the circumstances would allow. These were clearly separate and distinct causes of action. Therefore, each separate and distinct cause of action was subject to a separate and distinct claim for damages."

The appellate court affirmed the trial court, finding: "Susanne was indeed injured in the automobile accident, but the record is clear that but for negligent treatment of her injuries she would still be alive today." 241 Ill. App. 3d at 155.

Defendant appeals and argues that Susanne suffered only one injury, wrongful death, and that defendant, Zieba, and Ford are joint tortfeasors. Defendant asks this court for a setoff against plaintiff's verdict in the amount of plaintiff's settlements with Zieba and Ford.

One Injury or Two?

We first address the issue of whether Susanne suffered one injury or two, and, correspondingly, whether defendant, Zieba, and Ford are joint tortfeasors. We conclude that the trial and appellate courts were correct in finding that Susanne suffered two distinct injuries for which she could have received two separate recoveries, and that defendant is not a joint tortfeasor with Zieba and Ford.

This court addressed a similar issue in *Gertz v. Campbell* (1973), 55 Ill. 2d 84. In *Gertz*, the plaintiff was injured by the defendant, who drove his car into plaintiff, causing an injury to the plaintiff's leg. The plaintiff was brought to the hospital and later had his leg amputated. The plaintiff filed suit against the defendant seeking recovery for all damages, and the defendant filed suit against the treating doctor, alleging the doctor's negligence in treating the plaintiff had caused the plaintiff to lose his leg. The defendant sought

indemnification from the doctor only in the amount of damages caused by the doctor as the result of the new injury, or aggravation of the existing injury.

This court allowed the defendant in *Gertz* to file suit for indemnification against the doctor because two separate injuries existed: "[t]he wrongful conduct and the injuries sustained were at different times." (*Gertz*, 55 Ill. 2d at 89.) This court further noted that the defendant was liable for damages not only from the injury due to the accident, but from the injury due to any negligence of the doctor. However, the doctor was liable only for any injury plaintiff may have suffered due to the doctor's negligence, and was not liable for the first injury from the accident. This court further noted that the defendant and the doctor were not joint tortfeasors. *Gertz*, 55 Ill. 2d at 89.

This court again addressed this issue in *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418. In *Borowski*, the plaintiff was injured in a car accident and subsequently brought to a hospital. The plaintiff eventually had his leg amputated and brought suit against the driver of the car that hit him, as well as the doctor and hospital which treated him for the injuries. Prior to trial, the plaintiff settled with the driver of the car for $30,000. The plaintiff then went to trial against the doctor and hospital and received an award of $200,000. The trial court reduced the amount of the award by the $30,000 the plaintiff had received from the driver.

On appeal, the appellate court reversed because of improper jury instructions, which would have allowed the jury to find the driver and doctor and hospital to be joint tortfeasors. The appellate court then noted that had the award been made with proper jury instructions, the award should not have been reduced by the amount plaintiff settled with defendant. *Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 690.

On appeal from the appellate decision, this court affirmed and cited with approval the appellate court's holding:

" 'Since we have determined that the cause of action against the doctor and the cause of action against the auto driver are separate and distinct causes, each resting on its own elements of causation, if plaintiff had received a verdict against the doctor by using proper instructions, it would then have been improper to reduce that verdict by the amount received from the original tortfeasor. The plaintiff would have received two recoveries for two separate causes of action, and the reduction of one by the amount received from the successful conclusion of the other could not be sustained on any logical theory. Plaintiff would not have been compensated twice for the same injury because the recoveries would have represented compensation for two separate injuries.' 14 Ill. App. 3d 672, 690." *Borowski*, 60 Ill. 2d at 431-32.

The same is true here, as two separate injuries existed: (1) the injury from the accident; and (2) the injury from defendant's negligent treatment of the first injury. Defendant is a successive tortfeasor, not a joint tortfeasor, and as such is liable only for the second injury, while Zieba and Ford are liable for both injuries. We note briefly that both *Gertz* and *Borowski* were decided before contribution existed in Illinois. Thus, it was possible for the successive tortfeasors there to be held liable for the entire amount of damages for the second injury while the first tortfeasors were held liable for only the first injury. With contribution, however, damages from the second injury may now be apportioned amongst the first and successive tortfeasors.

Defendant argues, however, that Susanne suffered only one injury, wrongful death, and relies on this court's decision in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429. In *Burke*, this court adopted comment *i* to the Restatement (Second) of Torts section 433A:

" 'Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable, or practical division. *** By far the greater number of personal injuries, and of harms to tangible property, are *** single and indivisible. Where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.' Restatement (Second) of Torts § 433A, Comment *i*, at 439-40 (1965)." (*Burke*, 148 Ill. 2d at 438-39.)

Defendant relies on this comment to the Restatement adopted in *Burke* and argues that only one injury occurred, a wrongful death, which is a single injury, incapable of division.

In *Burke*, this court noted the following. Where a plaintiff's original injury can be distinguished from a physician's aggravation of that injury, separate and distinct injuries exist and defendants cannot be held jointly liable. However, "where defendants, albeit sharing no common purpose or duty, and failing to act in concert, nevertheless acted concurrently to produce an *indivisible* injury to the plaintiff," the defendants are joint tortfeasors. *Burke*, 148 Ill. 2d at 438.

In *Burke*, the plaintiff was injured by the first tortfeasor, and such injury was exacerbated and/or he received an additional injury from the second tortfeasor. However, there was "no clear medical evidence to show either that Burke's irreversible quadriplegia came about solely through negligence of [the first tortfeasor] or that the paralysis caused by [the first tortfeasor] was a temporary condition capable of reversal absent [the second tortfeasor's] misconduct. Either injury or both injuries could have caused plaintiff's lasting condition." (*Burke*, 148 Ill. 2d at 439.) Here, however, Susanne's injuries are divisible. As the appellate court noted, the

evidence at trial revealed that Susanne would not have died from the first injury if defendant had properly treated her.

Defendant also argues that *Gertz* and *Borowski* are distinguishable because, in those two cases, the doctors mistreated pre-existing injuries. Defendant overlooks the fact that when Susanne was brought to the hospital, she too had a pre-existing injury, which defendant failed to properly diagnose and treat.

### Contribution Act

Having found two separate injuries, we now turn to the issue of setoff. In order to resolve this issue, we must first examine the Joint Tortfeasor Contribution Act (Act), which provides in pertinent part:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, *** it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." Ill. Rev. Stat. 1985, ch. 70, par. 302(c).

Although the Act's title is the "Joint Tortfeasor Contribution Act," this court has noted that contribution is not limited only to joint tortfeasors. Instead, as the Act specifically provides, the Act applies to "one or more persons liable in tort," regardless of whether the liability is joint. (See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 12.) Thus, the Act applies not only to joint tortfeasors, but to concurrent and successive tortfeasors as well.

In the instant case, two injuries exist. Zieba and Ford are liable for the first injury, the automobile accident, and Zieba, Ford, and defendant are liable for the second, the negligent treatment of Susanne which resulted in her death. It is clear that plaintiff took steps in its suit against defendant to separate the two injuries and ensure that only evidence pertaining to the second

injury was presented. At issue here is whether plaintiff did the same in her suits and settlements with Zieba and Ford to keep the two injuries separate.

## Settlement Agreements

In order to determine whether defendant is entitled to any setoff, we must look to the settlement agreements and determine what plaintiff recovered in each. If plaintiff recovered any amount for the second injury from Zieba and Ford, plaintiff's judgment against defendant must be reduced by that amount. This is based on the premise that plaintiff is entitled to only one recovery for her injury (see *Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558), which is codified in the Act. The trial and appellate courts failed to address this issue, and thus erred.

## The Zieba Settlement

A review of the Zieba settlement reveals that plaintiff settled with Zieba for both injuries, not simply the first. Plaintiff sued Zieba for both injuries, received a settlement for both injuries, and released Zieba from liability for both injuries. Thus, defendant is entitled to set off the amount from the settlement with Zieba in the amount of that portion of the settlement which was attributable to the second injury, or the consideration paid for the release, whichever is greater, pursuant to the Act.

A problem arises, however: the Zieba settlement did not apportion the settlement proceeds in any manner. Plaintiff argues that no setoff may now be granted because no apportionment can be made. We agree with plaintiff that it is now impossible to apportion the settlement with Zieba, but disagree as to whether a setoff may now be granted.

As plaintiff notes, it is now impossible for any trier of fact to hear evidence regarding Susanne's pain and

suffering from the time of the accident until the time she received negligent medical care, or regarding the medical bills incurred prior to the time she received negligent medical care. Moreover, the trial court in the instant case cannot allocate the Zieba settlement because it was not involved in that settlement and did not hear any of this evidence. We believe, however, that under the facts of this case, where a plaintiff recovers for several injuries in a previous lawsuit and fails to apportion damages accordingly, a subsequent defendant should not bear the burden of proving what portion of the plaintiff's previous settlement should be set off or be denied a setoff. In holding this, we note that while settlement is one of the goals of the Act (see *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 325), public policy also favors protecting a nonsettling party's financial interest (*Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 322) and a plaintiff is only entitled to one recovery for her injuries.

This same result was reached in *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882. In *Betts*, the plaintiff appealed the trial court's allowance of a setoff in her action against a defendant for loss of consortium. The plaintiff had previously filed suit against another defendant for loss of consortium, wrongful death, and survival arising out of the same set of facts. This previous action was settled for $400,000, $50,000 of which was specifically allocated in the settlement to the plaintiff's wrongful death claim. However, no allocation was made of the remaining $350,000 between the plaintiff's actions for loss of consortium and survival.

The plaintiff in *Betts* asked the trial court in the second action to allocate the $350,000 for purposes of a setoff. The appellate court concluded that the trial court could not do such and noted:

"Since [the plaintiff] failed to agree on an appropriate allocation in the case against [the first tortfeasor] or to have the [previous] trial court exercise its discretion therein to determine an appropriate allocation, it is [the plaintiff's] burden, and not [the second tortfeasor's] *** to establish the entire unallocated $350,000 of the 1987 settlement was not attributable to her cause of action for loss of consortium against [the first tortfeasor] in the earlier case." *Betts*, 225 Ill. App. 3d at 900.

We agree and hold that defendant should not bear the burden of plaintiff's failure to properly allocate the Zieba settlement. (See *Farrall v. A.C.& S. Co.* (Del. 1990), 586 A.2d 662, 667; *Hirsovescu v. Shangri-La, Inc.* (1994), 127 Or. App. 22, 25, 870 P.2d 859, 860; *Nauman v. Eason* (Fla. Dist. Ct. App. 1990), 572 So. 2d 982, 985.) We further cite with approval one of our appellate court's holdings in this area:

"When reviewing a proposed settlement, the trial court should consider, in addition to the good-faith elements, the percentage of the settlement to be allocated with respect to the particular cause of action." *Foster v. Kanuri* (1992), 241 Ill. App. 3d 677, 681.

Plaintiff argues, however, that defendant should bear the loss for any failure to allocate the settlement because it failed to join the previous actions which resulted in settlement, and did not seek contribution from Ford or Zieba. However, defendant was not required to do either of these two things. We further note that it was plaintiff, and not defendant, who chose to file three separate lawsuits and failed to properly apportion the settlement.

Plaintiff also argues that defendant, "by the way it tried the case, has waived its rights" to argue for a setoff. Plaintiff here refers to the fact that defendant raised no objection to plaintiff's motions to restrict the evidence to only the second injury. Defendant has not waived the right to a setoff. As previously noted, defendant is liable only for the second injury, not the first.

Thus, any evidence concerning the first injury's damages would have been irrelevant at this trial.

Plaintiff also argues that defendant should not be protected here because it failed to settle a claim against it that was so strong that the trial court directed liability against it. Plaintiff argues that defendant only refused to settle so as to avoid its own responsibility. However, as noted, while Illinois has a public policy of encouraging settlements, Illinois also has a public policy of protecting nonsettling parties' financial interests and of limiting a plaintiff to one recovery for an injury. We further note that while defendant may have benefitted by its reluctance to settle, it could have also been held liable for a greater share of its *pro rata* liability under the Act as a nonsettling defendant. Settling parties are not subject to suits for contribution once they settle. This is a risk nonsettling defendants are allowed to take under the Act.

We further note here that the Act provides that a settlement reduces the amount of recovery against another defendant liable for the same injury by the amount stated in the release, or by the actual consideration paid for the release. Here, plaintiff agreed to release Zieba of all claims, including plaintiff's claim against Zieba for the second injury, in exchange for $100,000. At issue is what consideration was paid for the release of the wrongful death claim. Where a promise on one side is supported by several promises on the other, the single promise will provide consideration for all promises. (See 3 S. Williston, Contracts § 7:49, at 761 (4th ed. 1992).) The release of plaintiff's claim against Zieba for the second injury was supported by the $100,000 consideration. Thus, under the Act, defendant is entitled to a $100,000 setoff as being the consideration paid for the release.

## The Ford Settlement

The issue as to what, if any, setoff to which defendant is entitled from the Ford settlement poses a different question. Although plaintiff brought suit against Ford for both injuries, the settlement agreement appears to provide that the money paid was for the first injury only, and not the second. However, the settlement released Ford not only for the first injury, but for the second as well. Defendant argues that plaintiff has manipulated the Ford release to preclude setoff against defendant. Plaintiff responds that the settlement was found to be in good faith and that none of the money was for the second injury. Thus, according to plaintiff, there should be no setoff.

While the Ford settlement appears to allocate the entire amount received to the first injury, the settlement also releases Ford for the second injury. Thus, at issue is what consideration Ford paid for the release of the second injury. Again, the consideration paid for the release of Ford for the second injury is the amount paid to plaintiff for Susanne's injuries prior to the negligence of defendant. Thus, under the Act, defendant is entitled to a setoff of the amount allocated in the release to the injury, or the consideration paid for the release, whichever is greater. The greater amount here is the consideration paid for the release.

Plaintiff argues, however, that public policy in this State is to encourage voluntary settlements, and that the full intent of the Ford release should be given effect to effectuate that policy. However, we believe that the Act is clear and that plaintiff could have avoided this result by properly drawing the settlement agreements and apportioning the amount received from Ford between the first and second injury.

## Conclusion

We conclude that defendant is entitled to a setoff of both the Zieba and Ford settlements. We further caution

and advise that settlements in this area be properly drafted so as to avoid a setoff of the entire settlement. In the instant case, two separate injuries existed. Thus, plaintiff's counsel should have allocated the amount received in the first settlement between the two injuries so as to preclude setoff of the entire amount. In such a case, we note that the consideration received for each release of claim would be the same allocated to that claim, for each promise of release would be supported by separate consideration. The same applies to the Ford settlement.

For the foregoing reasons, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court for entry of a setoff of the amounts received in the settlements with Zieba and Ford.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded with directions.*