EVA EVANS, Indiv. and as Guardian of the Estate of Arthur Evans, a Disabled Person, Plaintiff-Appellee, v. TABERNACLE No. 1 GOD'S CHURCH OF HOLINESS IN CHRIST *et al.*, Defendants-Appellees (Gregory T. Brown *et al.*, Plaintiffs).—EVA EVANS, Indiv. and as Guardian of the Estate of Arthur Evans, a Disabled Person, Plaintiff-Appellee, v. EHS CHRIST HOSPITAL AND MEDICAL CENTER *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—95—3450, 1—95—3984 cons.

Opinion filed August 14, 1996.

---

Cassiday, Schade & Gloor, of Chicago (Brian C. Sundheim, Amy F. Schwmer, Jennifer A. Keller, and Carolyn Quinn, of counsel), for appellants.

Keck, Mahin & Cate, of Chicago (Dennis Minichello and Adrienne B. Pitts, of counsel), for appellees Tabernacle No. 1 God's Church of Holiness in Christ and Reverend Silas Watson.

JUSTICE GREIMAN delivered the opinion of the court:
■ This appeal arises from circuit court orders that dismissed

with prejudice a cause of action against one tortfeasor after approving a settlement and sustaining a motion for a good-faith settlement finding (case No. 94 L 12671). A second tortfeasor (case No. 94 L 13480) now contests the orders, asserting that the circuit court abused its discretion in finding a good-faith settlement because the settlement agreement included a loan-receipt provision. A loan-receipt agreement typically provides that settlement money received by the plaintiff from the settling tortfeasor operates as a loan that must be repaid to the settling tortfeasor out of proceeds obtained later from other nonsettling tortfeasors.

We reverse and remand, finding that the loan-receipt provision in the settlement agreement precluded a good-faith finding.

Plaintiffs Arthur Evans and Gregory Brown were injured when they fell from a platform while erecting an outdoor lighting apparatus in a parking lot on October 13, 1992. On October 25, 1992, Arthur Evans, while hospitalized for treatment of the injuries sustained in the fall, developed respiratory distress and suffered permanent brain damage.

On October 7, 1994, plaintiffs Evans, Brown and their respective spouses (Eva Evans and Lela M. Brown) filed a cause of action against defendants Tabernacle No. 1 God's Church of Holiness in Christ and Reverend Silas Watson (hereinafter the church defendants) based on alleged violations of the Illinois Structural Work Act (740 ILCS 150/1 *et seq.* (West 1992) (repealed by Pub. Act 89—2, eff. February 14, 1995)) (case No. 94 L 12671). When Arthur Evans fell, he was assembling the lighting equipment for the church defendants. Plaintiffs Gregory and Lela Brown entered into a separate settlement with the church defendants and are not a part of the present appeal.

On October 25, 1994, a second cause of action was filed by plaintiff Eva Evans as guardian of her husband Arthur Evans, a disabled person (hereinafter the Evans plaintiffs), against defendants EHS Christ Hospital and Medical Center and Doctors Richard P. Gonzalez, Gerald Lynch, and Tai-Min Lai (hereinafter the hospital defendants) (case No. 94 L 13480) based on allegations of medical malpractice for their treatment of Arthur Evans.

On May 16, 1995, the Evans plaintiffs filed a motion to approve a proposed settlement that they had reached with the church defendants and to enter a finding that the settlement was made in good faith as required by the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1992)). Defendant EHS Christ Hospital and Medical Center objected to the motion for a good-faith finding regarding the settlement agreement and argued that the proposed settlement contained an improper loan-receipt agreement.

The settlement agreement at issue provides in part that the church defendants would pay $275,000 to the Evans plaintiffs, who in turn would release the church defendants

"from any and all actions *** [and] third-party claims *** arising out of, foreseen and unforeseen, bodily and personal injuries, and/or death and the consequences thereof, resulting or to result from a certain incident or occurrence on or about October 13, 1992, as set forth in *** Case No. 94 L 12671 *** including but not limited to any claims, counterclaim and third-party claims in any way growing out of the subject matter of this action, which claims, counterclaim and third-party claims were, might or could have been raised in said cause.

\* \* \*

In further consideration *** Eva Evans *** guarantees to reimburse Church Mutual Insurance Company, insurer for the parties released herein, from any cash and payments received in settlement or by way of judgment from the case [against the hospital defendants] *** up to but not to exceed $100,000. *** It is understood that the cash and payments up to $100,000 received in the settlement of the suit against the parties released by this release and settlement agreement are[,] therefore, a loan, and said loan remains a debt of the Estate of Arthur Evans to Church Mutual Insurance Company to be satisfied by the Estate of Arthur Evans as provided herein."

On August 2, 1995, a hearing was held on the Evans plaintiffs' motion to approve the settlement and enter a good-faith finding. The circuit court took the matter under advisement and, thereafter, by orders dated August 10 and 15, 1995, approved the settlement between the Evans plaintiffs and the church defendants and entered a good-faith settlement finding. On August 22, 1995, the circuit court entered an order dismissing with prejudice the complaint against the church defendants pursuant to the settlement.

On September 6, 1995, the hospital defendants filed a motion for clarification of the circuit court's orders entered on August 10 and 15, 1995. The parties now maintain that the circuit court later denied the motion for clarification. The record on appeal, however, does not so clearly reveal such an order. The record includes an order dated September 27, 1995, as referenced by the hospital defendants. This order, however, does not deny the hospital defendants' motion for clarification but rather grants said defendants leave to file their motions under the correct case number *nunc pro tunc*.

The supplemental record, however, includes a transcript of a September 27, 1995, hearing at which the clarification motion was

addressed. At the hearing, the circuit court observed that it had entered a one-sentence order in August 1995 when it sustained the Evans plaintiffs' motion for a good-faith settlement finding and approved the settlement. The circuit court then explained:

"I felt this was different than in the [*Babb*] case. The main reason it seems to me, I felt there were two distinct separate cases. One was the Structural Work Act case, and one was the medical negligence case. Two distinct injuries and two separate facts, and I think that the settlement here was for the Structural Work Act case. I thought it was distinct. It didn't defeat the Contribution Act as it did in the [*Babb*] case. That's basically the reason."

The explanation provided by the circuit court at the September 27, 1995, hearing appears to clarify its decision to approve the settlement and enter a good-faith settlement finding.

■ We initially observe that the hospital defendants acknowledge that they have not yet filed a contribution action. However, the failure to file a contribution claim does not defeat their right to contest the settlement at issue. See *Maher v. Chicago Park District*, 269 Ill. App. 3d 136, 140 (1994); *Kipnis v. Meltzer*, 253 Ill. App. 3d 67, 68 (1993) ("a defendant need not file a contribution action to invoke the defense of setoff").

■ Next, the church defendants restate their objection to this court's granting of the hospital defendants' late notice of appeal pursuant to Illinois Supreme Court Rule 303 (155 Ill. 2d R. 303). Rule 303(a)(1) provides that a notice of appeal must be filed within 30 days after the entry of the final judgment appealed from or of the order disposing of the last pending post-judgment motion. 155 Ill. 2d R. 303(a)(1). The church defendants argue that the 30-day time limit was exceeded because the dismissal order was entered on August 22, 1995, and the motion for clarification filed by the hospital defendants on September 6, 1995, did not toll the 30-day limit.

On October 5, 1995, the hospital defendants filed their motion in this court for leave to file a late notice of appeal pursuant to Illinois Supreme Court Rule 303(d) (155 Ill. 2d R. 303(d)). Rule 303(d) authorizes us to grant leave to appeal within 30 days after expiration of the time for filing a notice of appeal upon motion supported by a showing of reasonable excuse. 155 Ill. 2d R. 303(d). On October 18, 1995, this court granted the hospital defendants' motion in accordance with our authority under Rule 303(d), and we find no reason to change our position.

On appeal, the hospital defendants assert that the settlement agreement violates the Contribution Act and the Illinois Supreme Court's ruling in *In re Guardianship of Babb*, 162 Ill. 2d 153 (1994),

because the settlement includes an unlawful loan-receipt agreement. We agree.

■ The burden of proof rests on the nonsettling tortfeasor to establish a lack of good faith by the preponderance of the evidence standard. *Bowers v. Murphy & Miller, Inc.*, 272 Ill. App. 3d 606, 610 (1995). Absent an abuse of discretion, this court will not reverse a circuit court's finding that a settlement was made in good faith. *Babb*, 162 Ill. 2d at 162. To determine whether a settlement agreement was made in good faith, the court must consider the totality of the circumstances, including whether the settlement agreement is consistent with the terms and policies of the Contribution Act. *Babb*, 162 Ill. 2d at 170.

In *Babb*, the Illinois Supreme Court reversed a good-faith finding and specifically held that "loan-receipt agreements may not be considered good-faith settlements within the meaning of the Contribution Act." *Babb*, 162 Ill. 2d at 179. The supreme court reasoned that "loan-receipt agreements violate the terms of and the policies underlying the Contribution Act." *Babb*, 162 Ill. 2d at 179.

■ The terms of the Contribution Act provide that a right of contribution exists among tortfeasors "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." 740 ILCS 100/2(a) (West 1992).

Settlement is allowed under the Contribution Act where it is given in good faith:

> "(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 1992).

The Contribution Act does not define good faith (*Babb*, 162 Ill. 2d at 161) but further provides that a settling tortfeasor "is discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(d) (West 1992). In addition, a settling tortfeasor is barred from recovering "contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(e) (West 1992).

■ The supreme court found that loan-receipt agreements would allow a settling tortfeasor to subvert subsection 2(e), which prohibits a settling tortfeasor from recovering contribution from another tort-

feasor. *Babb*, 162 Ill. 2d at 172. The supreme court explained as follows:

> "The settling tortfeasor obtains indirect contribution because the plaintiff uses damages recovered from the nonsettling tortfeasor to repay the loan to the settling tortfeasor. [Citation.] Loan-receipt agreements therefore violate the terms of the Contribution Act by allowing a settling tortfeasor to accomplish indirectly that which is expressly forbidden by the Act." *Babb*, 162 Ill. 2d at 172.

In addition, loan-receipt agreements violate section 2(c) of the Contribution Act by depriving or reducing the nonsettling tortfeasor's statutory right to a setoff. *Babb*, 162 Ill. 2d at 172-73. In *Babb* the monetary settlement totaled $400,000, of which $350,000 would have to be repaid to the settling tortfeasor. Under this repayment scheme, any nonsettling tortfeasor would be entitled to only a $50,000 setoff. Therefore, the supreme court found "that the terms of the settlement agreement, under which the nonsettling tortfeasors are not entitled to a full setoff for the [settlement] amount ***, violate the terms of the Contribution Act." *Babb*, 162 Ill. 2d at 173.

The same flaws regarding the terms of the Contribution Act found in *Babb* exist in the present case, where the settlement agreement provided that the Evans plaintiffs must repay up to $100,000 of the proceeds received from the hospital defendants.

■ Loan-receipt agreements violate the policies underlying the Contribution Act. *Babb*, 162 Ill. 2d at 175-79. The twin policies promoted in the Contribution Act are to provide an equitable sharing of damages among multiple tortfeasors in accordance with their relative culpability and to encourage settlements. *Babb*, 162 Ill. 2d at 171; *Bowers*, 272 Ill. App. 3d at 608.

First, an equitable apportionment of damages is defeated by a loan-receipt agreement because a settling tortfeasor's ability to recapture any settlement monies it has paid necessarily and improperly shifts the share of liability from the settling tortfeasor to the nonsettling tortfeasor. *Babb*, 162 Ill. 2d at 175.

Second, loan-receipt agreements undermine "the legislature's intent to encourage settlement of the *entire* litigation." (Emphasis in original.) *Babb*, 162 Ill. 2d at 178. The supreme court explained as follows:

> "Because the plaintiff must repay the amount of the loan to the settling tortfeasor, the remaining tortfeasors necessarily must bear a larger share of the plaintiff's damages than might be warranted by an analysis of comparative fault. The plaintiff must insist on higher settlement figures from the remaining tortfeasors to obtain full compensation for his loss, because the plaintiff must

repay the loan amount. Consequently, the remaining tortfeasors are *less* likely to settle, since they have little to lose by taking the matter to trial. Thus, loan-receipt agreements undermine, rather than promote, the private settlement of disputes." (Emphasis in original.) *Babb*, 162 Ill. 2d at 179.

Following its policy discussion, the supreme court concluded "that loan-receipt agreements frustrate both of the policies underlying the Contribution Act." *Babb*, 162 Ill. 2d at 179.

■ We also recognize that section 2(c) of the Contribution Act, addressing settlement and setoff, condemns a double recovery and "reflects the long-recognized principle in Illinois that a plaintiff shall have only one satisfaction for an injury." *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 368 (1995). In addition, Illinois has a pubic policy of protecting nonsettling parties' financial interests. *Patton v. Carbondale Clinic, S.C.*, 161 Ill. 2d 357, 372 (1994). Loan-receipt agreements also, by their very nature, undermine these policies.

Although the church defendants would have us strictly confine the supreme court's holding in *Babb* to the attendant circumstances only present in the *Babb* case, we do not view the supreme court's holding so narrowly. The supreme court went to great length to explain the historical context of loan-receipt agreements, the enactment of the Contribution Act and its effect on precedent. Moreover, the supreme court recognized that its decision in *Babb* overruled past precedent.

■ In light of the loan-receipt provision in the settlement agreement in the present case and the ruling in *Babb*, we reverse the circuit court's finding that the settlement agreement between the Evans plaintiffs and the church defendants was made in good faith.

Assuming that this court would find that the loan-receipt arrangement violates the Contribution Act, the church defendants argued that the Contribution Act does not apply to the settlement agreement because it only covered the first injury regarding the fall from the platform, not the subsequent medical negligence of the hospital defendants. We disagree.

■ The Contribution Act applies to joint, concurrent and successive tortfeasors (*Patton*, 161 Ill. 2d at 368) and thus permits contribution or setoff among co-tortfeasors as long as the "same injury" is involved (*Pasquale*, 166 Ill. 2d at 369). Accordingly, the entire amount of a settlement that compensated for a single indivisible injury can be set off against a recovery based on that injury. *Pasquale*, 166 Ill. 2d at 369. However, "a setoff is inappropriate where sought to be applied against a recovery for injuries 'separate and distinct' from those for which the plaintiff was already compensated through settlement." *Pasquale*, 166 Ill. 2d at 370.

In *Patton* the Illinois Supreme Court found that two separate injuries existed where the plaintiff (15-year-old Susanne Patton) was first injured in a car accident, treated in the emergency room of the defendant hospital, admitted overnight for evaluation, released from the hospital the next day, and later readmitted for emergency surgery. The plaintiff subsequently died. Three separate actions were brought against the driver of the car in which plaintiff was a passenger, the maker of the car (Ford Motor Company) and the defendant hospital, respectively. Under these facts, the supreme court concluded that the plaintiff suffered two distinct injuries, *i.e.*, the injury from the car accident and the injury from the negligent treatment by the defendant hospital. *Patton*, 161 Ill. 2d at 366.

Two separate injuries necessarily connote an initial tortfeasor and a successive tortfeasor. For purposes of contribution, the initial tortfeasor is liable for both injuries while the successive tortfeasor is liable only for the second injury. *Patton*, 161 Ill. 2d at 366.

▪ Similarly, in the present case, Arthur Evans suffered two separate injuries, *i.e.*, the injury from the fall off the platform and the negligent treatment by the hospital defendants. Accordingly, for purposes of contribution as held in *Patton*, the church defendants (the initial tortfeasors) are liable for both injuries while the hospital defendants (the successive tortfeasors) are liable only for the second injury.

An initial tortfeasor can properly restrict its settlement agreement to the first injury only and allocate the amount received by the plaintiff to the first injury only, thereby eliminating a setoff for the second injury. *Patton*, 161 Ill. 2d at 373. Failure to draw the settlement in this fashion, however, entitles the nonsettling tortfeasor to a setoff. *Patton*, 161 Ill. 2d at 373.

▪ Contrary to the church defendants' interpretation of the settlement agreement, we believe that the release at issue is not restricted to the first injury only and does not apportion the money received between the first and second injuries.

The release specifically provides that, in consideration of a $275,000 payment, the church defendants are released from all actions and claims

> "including but not limited to any claims, counterclaim and third-party claims in any way growing out of the subject matter of this action, which claims, counterclaims and third-party claims were, might or could have been raised in said cause."

The release further provides that the recipients of the money

> "expressly waive and release, along with all the possible causes of action and claims described above, any cause of action they had or

may have under the Illinois Wrongful Death Act. Further, Eva Evans *** expressly waives and forever discharges and releases [the church defendants] *** from any future, potential separate cause of action based on a survival theory *** or based on the Wrongful Death Act."

Moreover, the $275,000 is not apportioned between the two injuries. Accordingly, we find that the hospital defendants' right to a setoff has been preserved.

As the supreme court stated in *Patton*:

"[W]e believe that the [Contribution] Act is clear and that plaintiff could have avoided this result by properly drawing the settlement agreements and apportioning the amount received from [one tortfeasor] between the first and second injury.

\* \* \*

*** We further caution and advise that settlements in this area be properly drafted so as to avoid a setoff of the entire settlement. In the instant case, two separate injuries existed. Thus, plaintiff's counsel should have allocated the amount received in the first settlement between the two injuries so as to preclude setoff of the entire amount." *Patton*, 161 Ill. 2d at 373-74.

We, therefore, reject the church defendants' argument that the Contribution Act does not apply and find that the hospital defendants have preserved a right of contribution.

For all the foregoing reasons, we reverse the circuit court's orders that approved the settlement agreement between the Evans plaintiffs and the church defendants, found a good-faith settlement and dismissed with prejudice the cause of action against the church defendants (case No. 94 L 12671). We remand this matter to the circuit court for further proceedings consistent with our decision.

Reversed and remanded.

RIZZI[1] and CERDA, JJ., concur.

---

[1]Justice Rizzi participated in the decision in this appeal prior to his retirement from the Appellate Court of Illinois, First District.