RICHARD KOZAK *et al.*, Plaintiffs-Appellees, v. SHAKIR MOIDUDDIN *et al.*, Defendants (Stephen Rembos, Third-Party Plaintiff; Yellow Freight System, Inc., Intervenor and Third-Party Defendant-Appellant).

First District (1st Division)   No. 1—96—0756

Opinion filed October 20, 1997.—Modified on denial of rehearing December 22, 1997.

McCullough, Campbell & Lane, of Chicago (Patrick M. Graber and Joshua L. Prober, of counsel), for appellant.

Michael W. Rathsack, of Chicago (Kenneth R. Nix and Michael W. Rathsack, of counsel), for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

In June of 1994, plaintiffs, Richard and Kathy Kozak, filed suit against defendants Shakir Moiduddin (a medical doctor) and Stephen Rembos (a podiatrist) for damages resulting from negligent medical treatment Richard received after he incurred a foot injury while at work in 1992. Richard Kozak's employer, Yellow Freight System, Inc., intervened in the action and claimed a lien, pursuant to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)), against any recovery the Kozaks ultimately obtained. Before plaintiffs filed their suit, Yellow Freight had settled Mr. Kozak's workers' compensation claim for over $290,000. Once Yellow Freight intervened, defendant Dr. Rembos[1] filed a third-party contribution action against Yellow Freight. Yellow Freight successfully moved to dismiss the third-party complaint pursuant to section 2—615 of the Code of Civil Procedure (725 ILCS 5/2—615 (West 1992)), asserting that the negligent treatment of Kozak's preexisting injury was not the same injury for contribution purposes. Plaintiffs then filed a motion to dismiss Yellow Freight's intervention pursuant to section 2—619 of the Code of Civil Procedure (725 ILCS 5/2—619 (West 1992)), charging that Yellow Freight's position in the third-party action judicially estopped Yellow Freight from asserting its lien in the present litigation. The trial court agreed and granted plaintiffs' motion. Third-party defendant Yellow Freight brings this appeal, contending that the trial court's holding—that Yellow Freight is not a joint tortfeasor for contribution purposes—does not preclude Yellow Freight from asserting its lien for payments it previously made under the Workers' Compensation Act.

On June 6, 1992, Mr. Kozak sustained a crushing injury to his left foot and ankle during the course of his employment at Yellow Freight. Medical personnel at Palos Community Hospital treated and released plaintiff later that day. Defendant Moiduddin treated plaintiff on June 8 and 11, 1992. Plaintiff then received further treatment from defendant Rembos on June 13, 1992, and at other times thereafter. According to plaintiffs, Rembos negligently performed several surgical procedures on plaintiff's foot and ankle. Allegedly, *the treatment* of his injured foot and ankle caused Kozak to develop reflexive sympathetic dystrophy (RSD), which manifests itself through extreme pain and loss of mobility.

On April 8, 1994, Yellow Freight agreed to settle plaintiff's workers' compensation claim for $297,955.01, including $66,587.87 for

---

[1]The trial court ultimately entered summary judgment in favor of Dr. Moiduddin, thus removing him from the present litigation.

medical expenses, $36,052.14 for plaintiff's temporary total disability and $190,000 for plaintiff's permanent partial disability. Shortly after Mr. Kozak settled his workers' compensation claim, plaintiffs filed the present medical malpractice suit against the defendant doctors. Plaintiff Richard Kozak seeks to recover damages for pain and suffering, loss of mobility, disability, disfigurement, loss of earnings and earning capacity, as well as past and future medical expenses. Plaintiff Kathy Kozak seeks to recover damages for the loss of consortium she sustained as a result of the defendant doctors' allegedly negligent treatment.

Yellow Freight first sought to intervene in this action on October 5, 1994, claiming a lien against any funds recovered by Mr. Kozak in his medical malpractice suit. In May 1995, Dr. Rembos attempted to join Yellow Freight as a third-party defendant under the Joint Tortfeasor Contribution Act (740 ILCS 100/2 (West 1992)). Yellow Freight subsequently filed its section 2—615 motion to dismiss the third-party complaint, arguing that, for purposes of the Joint Tortfeasor Contribution Act, the initial injury Mr. Kozak received while employed at Yellow Freight was separate and distinct from the injury caused by the doctors' negligent treatment. The trial court granted Yellow Freight's motion and dismissed the third-party complaint on June 30, 1995.

On August 23, 1995, plaintiffs filed a motion seeking to dismiss Yellow Freight as an intervenor. In their motion, plaintiffs asserted that if Kozak's workplace injury was separate and distinct from his malpractice injury, then Yellow Freight had no right to maintain a workers' compensation lien on his malpractice recovery. The trial court granted plaintiffs' motion and held that, in light of Yellow Freight's response to Dr. Rembos' third-party action, the doctrine of judicial estoppel applied to bar Yellow Freight from asserting its workers' compensation lien against any recovery Kozak obtained as a result of his medical malpractice injury.

■ Third-party defendant Yellow Freight argues on appeal that the trial court erred when it concluded that the doctrine of judicial estoppel applied to the present case. Our review of a dismissal pursuant to section 2—619 is *de novo*. *Lohman v. Bemis*, 289 Ill. App. 3d 139, 140, 680 N.E.2d 819, 820 (1997). In general, the following five elements are necessary to justify application of the judicial estoppel doctrine: (1) two positions must be taken by the same party; (2) the positions must be taken in separate judicial or quasi-judicial proceedings; (3) the party must intend the trier of fact to accept the truth of the facts alleged in support of the positions; (4) the party must have successfully maintained the first position and received some benefit

in the first proceeding; and (5) the positions must be totally inconsistent. *Bidani v. Lewis,* 285 Ill. App. 3d 545, 550, 675 N.E.2d 647, 650 (1996); *Galena Park Home v. Krughoff,* 183 Ill. App. 3d 206, 208, 538 N.E.2d 1366, 1367 (1989). Because Yellow Freight did not intend for the trier of fact to rely upon any factual allegations in support of its motion to dismiss the third-party action, we hold that the trial court erred in dismissing Yellow Freight as an intervenor in the present case.

■ Initially, we note that Yellow Freight moved to dismiss the third-party complaint against it pursuant to section 2—615 of the Code of Civil Procedure. Dismissal under section 2—615 is appropriate only when it clearly appears that no set of facts could ever be proved under the pleadings that would entitle the plaintiff (here third-party plaintiff Dr. Rembos) to recover. *Lockwood v. Standard & Poor's Corp.,* 289 Ill. App. 3d 194, 195-96, 680 N.E.2d 131, 132 (1997). It is axiomatic that, when ruling upon such a motion, the court must take as true all well-pled facts of the complaint and draw all reasonable inferences therefrom in favor of the nonmovant. *Douglas Theater Corp. v. Chicago Title & Trust Co.,* 288 Ill. App. 3d 880, 883, 681 N.E.2d 564, 566 (1997).

In its motion to dismiss, Yellow Freight correctly argued that, as a matter of law, if a doctor negligently treats a preexisting injury, he has committed a tort that is separate and distinct from the tort allegedly committed by the first wrongdoer, and they are not joint tortfeasors. *Patton v. Carbondale Clinic, S.C.,* 161 Ill. 2d 357, 366, 641 N.E.2d 427, 432 (1994), *rev'g* 241 Ill. App. 3d 149, 608 N.E.2d 688 (1993); *Cram v. Showalter,* 140 Ill. App. 3d 1068, 1072, 489 N.E.2d 892, 895 (1986); *Borowski v. Von Solbrig,* 14 Ill. App. 3d 672, 683, 303 N.E.2d 146, 154 (1973), *aff'd,* 60 Ill. 2d 418, 328 N.E.2d 301 (1975); but *cf. O'Keefe v. Greenwald,* 214 Ill. App. 3d 926, 933-34, 574 N.E.2d 136, 140 (1991) (outside of the joint tortfeasor context, a release of the original tortfeasor may operate to release subsequent medical malpractice defendants). Yellow Freight further argued that the Joint Tortfeasor Contribution Act provides for a right of contribution only "where 2 or more persons are subject to liability in tort arising out of *the same injury*" (emphasis added). 740 ILCS 100/2(a) (West 1992). This argument was incorrect. *Patton,* 161 Ill. 2d at 368, 641 N.E.2d at 432 (Joint Tortfeasor Contribution Act "applies not only to joint tortfeasors, but to concurrent and successive tortfeasors as well"). Nevertheless, the trial court agreed with Yellow Freight and held that Rembos could prove no set of facts entitling him to recover. Therefore, Yellow Freight offered no factual allegations to the trier of fact in its motion to dismiss; instead, the third-party defendant merely argued

that, even accepting as true all of Rembos' well-pled facts, the third-party complaint was insufficient at law.

Unhappily, it appears as if the trial court may have erred in dismissing the third-party plaintiff's contribution action. However, neither party has placed the propriety of that order before this court. Moreover, the record demonstrates that Yellow Freight never relied upon any factual allegations in support of its section 2—615 motion. Thus, one condition generally necessary to establish judicial estoppel—that a party must intend the trier of fact to accept the truth of the facts it alleges in support of its positions—does not obtain in the present case.

■ In our decision today, we are mindful of the fact that Yellow Freight intervened in this case pursuant to section 5(b) of the Workers' Compensation Act. That section provides in pertinent part:

> "Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.
> ***
> If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party." 820 ILCS 305/5(b) (West 1992).

One of the purposes of section 5(b) is to prevent the employee from obtaining a double recovery. *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 112, 483 N.E.2d 273, 276 (1985); see also *Ullman v. Wolverine Insurance Co.*, 48 Ill. 2d 1, 7, 269 N.E.2d 295, 298 (1970) (an employee may not retain both compensation from his employer and identical damages from the tortfeasor). In the present case, Mr. Kozak was injured during

the course of his employ at Yellow Freight, an injury that he alleges Dr. Rembos exacerbated by his negligent treatment. Before Yellow Freight knew of the plaintiffs' medical malpractice claims, it agreed to pay compensation for Mr. Kozak's medical expenses, temporary total disability and permanent partial disability—as required by section 8 of the Workers' Compensation Act (820 ILCS 305/8 (West 1992)). Shortly after the settlement, plaintiffs filed the present action seeking compensation for, among other things, medical expenses, loss of mobility, and disability, as well as loss of earnings and earning capacity. In our opinion, these damages translate roughly into medical expenses, temporary total disability and permanent partial disability caused by the malpractice. Under these facts, the distinct possibility exists that Yellow Freight already paid compensation benefits to Kozak for damages that actually arose from Dr. Rembos' alleged medical malpractice; thus, Yellow Freight paid compensation for an injury (the negligent treatment) "caused under circumstances creating a legal liability for damages on the part of [Dr. Rembos] to pay damages." Accordingly, Yellow Freight should remain free to assert its lien under section 5(b), in order to prevent Mr. Kozak from securing a double recovery.

Although it is not binding upon this court, we find instructive the decision of the United States Court of Appeals for the Seventh Circuit in *Williams v. Katz*, 23 F.3d 190 (7th Cir. 1994). The plaintiff in that case, an employee injured on the job, filed a diversity action against the attorneys who represented him in his workers' compensation proceeding, charging them with legal malpractice. The attorneys allegedly "dithered" away while the limitations period expired on a medical malpractice action that the plaintiff sought to assert against the physicians who treated his employment injury. 23 F.3d at 191. United Airlines, the plaintiff's employer, moved to intervene in the legal malpractice action pursuant to section 5(b) of Illinois' Workers' Compensation Act. The district court denied United's motion to intervene, but the court of appeals reversed. 23 F.3d at 191, 194. Judge Posner, writing for the court, stressed that section 5(b) of the Act recognizes an employer's lien whenever the injury occurs " 'under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages.' " 23 F.3d at 192, quoting 820 ILCS 305/5(b) (West 1992). Without discussion, the court interpreted section 5(b) as entitling United to bring suit against the doctors; therefore, since the only damages the plaintiff sought from the lawyers were those he would have recovered in a timely action against the doctors, United—the employer which had already given the plaintiff benefits for damages allegedly caused by the doc-

tors—was also entitled to a lien against any recovery for legal malpractice. 23 F.3d at 193.

Of course, *Williams* is distinguishable from the present case to the extent that, in *Williams*, United (successfully) attempted to assert a lien on the recovery for an injury *twice removed* from the original workplace injury for which it gave its employee workers' compensation benefits. In contrast, here we consider only whether an employer who paid compensation benefits may intervene or assert a lien against any subsequent recovery on a medical malpractice injury (an injury only once removed from the original workplace injury).

In their brief, plaintiffs argue that Yellow Freight was not liable under the Workers' Compensation Act for the injury that resulted from Dr. Rembos' malpractice. In support of this contention, plaintiffs rely on *Zick v. Industrial Comm'n*, 93 Ill. 2d 353, 444 N.E.2d 164 (1982). In that case, the plaintiff sustained a foot injury at work and sought recovery for her subsequent disability and related medical problems, which included reflex sympathetic dystrophy. 93 Ill. 2d at 356, 444 N.E.2d at 166. Her employer responded with evidence that the plaintiff's disability had been caused by overtreatment. 93 Ill. 2d at 357, 444 N.E.2d at 166. The Industrial Commission denied compensation and determined that the disability did not result from the trauma of the workplace injury but, rather, was due to a congenital anomaly aggravated by medical mistreatment. 93 Ill. 2d at 359, 444 N.E.2d at 167. The supreme court affirmed the Commission's decision. 93 Ill. 2d at 362, 444 N.E.2d at 168.

The authorities relied upon by plaintiffs are inapposite to the present case. *Zick*, 93 Ill. 2d 353, 444 N.E.2d 164 (employer contested payment of workers' compensation disability benefits before the Industrial Commission); *Reynolds v. Danz*, 172 Ill. App. 3d 907, 527 N.E.2d 169 (1988) (same). In the case *sub judice*, Yellow Freight agreed to pay Kozak benefits for his medical expenses, temporary total disability, and permanent partial disability. In the absence of malpractice, section 8 of the Workers' Compensation Act clearly required this. Nothing in the record suggests that Yellow Freight knew, prior to the filing of this lawsuit, of the possibility that Dr. Rembos' malpractice caused Kozak's disability and part of his medical expenses. If Kozak ultimately establishes that Dr. Rembos malpracticed upon him, then Yellow Freight will have overcompensated its employee. To paraphrase the seventh circuit in *Williams*, Dr. Rembos' negligence will have claimed two victims: Yellow Freight, to the extent that it had to pay extra workers' compensation benefits, and Kozak, to the extent that those benefits fell short of his total loss. *Williams*, 23 F.3d at 193. Because Yellow Freight previ-

ously settled Kozak's claim for disability benefits before it had any knowledge of Kozak's potential malpractice recovery against Rembos, we hold that *Zick* and *Reynolds* do not control our decision in this case.

This court has recognized that an employer may exercise a lien against an employee's subsequent malpractice recovery, although that lien "should extend to only those expenses attributable to the medical aggravation of the injury, *i.e.*, that the amount of the lien should be limited to the amount that the employer is required to pay because of the malpractice." *Robinson v. Liberty Mutual Insurance Co.*, 222 Ill. App. 3d 443, 447, 584 N.E.2d 182, 184 (1991). In this case, defendant Rembos' alleged malpractice commenced only six days after the original trauma; therefore, any award for medical expenses incurred after Rembos' initial treatment of Kozak may be subject to Yellow Freight's lien. Similarly, to the extent that Mr. Kozak's temporary and permanent disability was in fact caused by the medical mistreatment he received, any award for such disability may also be subject to a workers' compensation lien by Yellow Freight.

We believe our holding today conforms with the legislature's intent when it adopted the workers' compensation scheme. " 'The object of the act is the allowance of compensation for accidental injuries to employees as promptly and cheaply as may be.' " *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d at 112, 483 N.E.2d at 276, quoting *Liquid Carbonic Co. v. Industrial Comm'n*, 352 Ill. 405, 410, 186 N.E. 140 (1933). Section 5(b) enables an employer to pay compensation benefits to an injured employee quickly; if the employee's damages are attributable to the conduct of a third party, the employer may then reach the true offender, either by filing its own cause of action against that third party or by asserting a lien on any subsequent recovery obtained by the employee. *J.L. Simmons*, 108 Ill. 2d at 112, 483 N.E.2d at 276, citing *Ullman*, 48 Ill. 2d at 7, 269 N.E.2d at 295. Should this court adopt plaintiffs' position and bar Yellow Freight from intervening and/or asserting its lien in the present action, we would essentially penalize Yellow Freight for expeditiously settling Mr. Kozak's workers' compensation claim before it became aware of the facts regarding Rembos' alleged negligence. Such an outcome would offer a powerful incentive for employers to delay paying out workers' compensation benefits until after it had been established that malpractice played no part in exacerbating a claimant's injuries. Because we choose not to frustrate the system's goal of swift, certain, and efficient settlement of employment injury claims, we reject plaintiffs' arguments and hold that Yellow Freight is entitled to assert its workers' compensation lien.

For the foregoing reasons, we reverse the decision of the trial court and remand this cause to that court with instructions that it reinstate Yellow Freight's petition to intervene.

Reversed and remanded with instructions.

CAMPBELL, P.J., and BUCKLEY, P.J., concur.