CHARLES DAVID BORROWMAN, Plaintiff-Appellant and Cross-Appellee, v. REBECCAH PRASTEIN *et al.*, Defendants (Watertower Paint and Repair Company, Intervenor-Appellee and Cross-Appellant).

Fourth District   No. 4—04—0559

Opinion filed March 28, 2005.—Rehearing denied May 4, 2005.

Carissa A. Mahr and Warren E. Danz, both of Warren E. Danz, P.C., of Peoria, for appellant.

Michael E. Rusin, Gregory G. Vacala, and Maxwell H. Brusky, all of Rusin, Maciorowski & Friedman, Ltd., of Chicago, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, Charles David Borrowman, and intervenor, Watertower Paint & Repair Company, respectively, appeal the trial court's order awarding Watertower a lien pursuant to section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2002)) on Borrowman's medical malpractice settlement. Borrowman questions the propriety of the court's award and, in the alternative, the amount.

Watertower disputes only the amount, arguing it is entitled to more than awarded. We reverse.

## I. BACKGROUND

On April 7, 1995, Borrowman, while working for Watertower, was painting the inside of a water tower when his safety rigging collapsed, causing him to fall into the tower, fracturing his heel. Dr. Rebeccah Prastein, an orthopedic surgeon, performed surgery to repair the fracture. Soon thereafter, Borrowman developed an infection in the bone known as osteomyelitis, which Dr. Prastein treated with antibiotics. Because the infection worsened, Dr. Prastein operated again on the foot and attempted to remove the infectious area. Dr. Prastein then prescribed two more-aggressive antibiotics—Vancomycin and Gentamycin.

Although the infection had cleared by September 1995, Borrowman experienced a severe earache, some hearing loss, dizziness, and vestibular balance problems, which were later associated with the antibiotics prescribed by Dr. Prastein. Borrowman suffered irreversible damage to his inner ear. One of Borrowman's expert witnesses said the two antibiotics should not have been prescribed together without closely monitoring Borrowman's health because, when taken together, the antibiotics have a toxic effect.

With regard to the foot injury only, Dr. Prastein released Borrowman to work with restrictions on November 20, 1995, and without restrictions on July 25, 1996. Soon after the accident, Borrowman filed for workers' compensation benefits against Watertower.

In October 1997, Borrowman filed suit against Dr. Prastein and the Visiting Nurses Association of Morgan and Scott Counties (VNA) for damages resulting from the negligent medical treatment Borrowman received. Neither Dr. Prastein nor the VNA is a party to these appeals.

On January 7, 2000, pursuant to a settlement contract, Borrowman and Watertower settled the pending workers' compensation case for $230,000.

In February 2001, Borrowman filed his first petition to adjudicate Watertower's claim that it was entitled to a workers' compensation section 5(b) lien against any recovery Borrowman might receive from the malpractice case. In July 2001, Borrowman agreed to settle the medical malpractice claims for $750,000.

Within days of the settlement, Borrowman again filed a petition to adjudicate Watertower's alleged lien, and the parties engaged in discovery for the next two years.

On January 8, 2004, the trial court conducted a hearing on the

adjudication of the lien. In support of Watertower's position, Arthur R. Kingery, a workers' compensation attorney from Peoria, Illinois, testified as Watertower's expert witness. Kingery had reviewed Borrowman's medical records and testified as to how much, in his opinion, of the workers' compensation settlement was attributable to the medical malpractice.

Borrowman testified on his own behalf that in January 2000, when he settled his workers' compensation claim, he was still experiencing pain in his foot and dizziness from the vestibular condition. In his opinion, he would not be able to return to work as a high-tower painter because of both injuries, not just the vestibular condition. He testified that he was unable to work after Dr. Prastein's release-to-work date because of the foot injury alone and he was entitled to all of the disability payments Watertower had made irrespective of the malpractice, which impacted his balance difficulties.

At the close of evidence, the trial court ordered the parties to submit written arguments and on April 12, 2004, held Watertower was entitled to a lien on Borrowman's medical malpractice settlement in the amount of $175,973.71.

On May 28, 2004, without further explanation, the trial court denied Watertower's motion for reconsideration. These appeals followed.

## II. ANALYSIS

Borrowman appeals and Watertower cross-appeals the trial court's order granting Watertower a $175,973.71 section 5(b) lien against Borrowman's medical malpractice settlement. Borrowman claims Watertower is not entitled to a lien at all or, in the alternative, is entitled to less than the amount ordered. Relying on the First District's opinions in *Kozak v. Moiduddin*, 294 Ill. App. 3d 365, 689 N.E.2d 217 (1997), and *Robinson v. Liberty Mutual Insurance Co.*, 222 Ill. App. 3d 443, 584 N.E.2d 182 (1991), Watertower insists the court miscalculated the lien and claims it is entitled to more than the amount awarded.

The pivotal issue in this appeal is whether Watertower is entitled to a lien pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 2002)) when it agreed to settle its claims with Borrowman knowing a medical malpractice case was pending.

■ Section 5(b) allows, in certain circumstances, an employer to claim a lien on any amount recovered by an employee from a third party. The section sets forth, in relevant part, as follows:

> "Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his

employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative ***." 820 ILCS 305/5(b) (West 2002).

In *Robinson*, the trial court awarded the intervenor insurance company a lien on the plaintiff's medical malpractice settlement. *Robinson*, 222 Ill. App. 3d at 444, 584 N.E.2d at 182. The plaintiff claimed the court erred in awarding a lien amount equivalent to the full amount of workers' compensation benefits paid by the intervenor. *Robinson*, 222 Ill. App. 3d at 444, 584 N.E.2d at 182. The appellate court agreed and held the intervenor's lien should be equivalent only to the amounts paid that were directly attributable to the malpractice. *Robinson*, 222 Ill. App. 3d at 448, 584 N.E.2d at 184.

Here, Watertower cites *Robinson* for the proposition that, pursuant to section 5(b), it is undoubtedly entitled to a lien on the malpractice settlement, even though the amount of the lien "should extend to only those expenses attributable to the medical aggravation of the injury" (*Robinson*, 222 Ill. App. 3d at 447, 584 N.E.2d at 184).

Watertower finds further support in *Kozak*, where the appellate court also held the intervenor employer was entitled to a lien against the plaintiff's recovery from his medical malpractice action. *Kozak*, 294 Ill. App. 3d at 372, 689 N.E.2d at 223. The plaintiff and his employer agreed to settle the plaintiff's workers' compensation claim for nearly $300,000. *Kozak*, 294 Ill. App. 3d at 366-67, 689 N.E.2d at 219. Shortly after the settlement, the plaintiff filed a medical malpractice suit against the doctors who treated his work-related injury. *Kozak*, 294 Ill. App. 3d at 367, 689 N.E.2d at 219. The employer sought to intervene in the action, claiming a lien against any funds recovered by the plaintiff.

Relying on the Joint Tortfeasor Contribution Act (740 ILCS 100/ 0.01 through 5 (West 1992)), and for reasons not relevant to the issues before us, the trial court held the employer was judicially estopped from asserting his lien rights. *Kozak*, 294 Ill. App. 3d at 367, 689 N.E.2d at 219.

On appeal, the employer argued that the trial court's holding— that it was not a joint tortfeasor for contribution purposes—did not

preclude it from asserting its lien for payments made under the Act. *Kozak*, 294 Ill. App. 3d at 366, 689 N.E.2d at 219. The appellate court held that the employer *was* entitled to assert its lien, since it was not aware of the potential for medical negligence in the treatment of the plaintiff's work-related injury when it agreed to settle its workers' compensation claim. *Kozak*, 294 Ill. App. 3d at 372, 689 N.E.2d at 223.

We find crucial distinctions between the case *sub judice* and both *Robinson* and *Kozak*. First, *Robinson*, unlike this case, involved no workers' compensation settlement. The Illinois Industrial Commission adjudicated the plaintiff's claim and determined the extent of the employer's liability. *Robinson*, 222 Ill. App. 3d at 444, 584 N.E.2d at 182. Second, in *Kozak*, the employer settled the plaintiff's workers' compensation claim *before* it knew of the medical malpractice allegations. *Kozak*, 294 Ill. App. 3d at 367, 689 N.E.2d at 219. Despite Watertower's insistence that the employer's lack of knowledge of the malpractice claim at the time it settled the workers' compensation claim in *Kozak* was insignificant, we find it was of the utmost importance.

Borrowman filed his workers' compensation claim soon after the April 1995 accident. He filed his malpractice claim in 1997. While the malpractice claim was pending, Watertower and Borrowman settled the workers' compensation case. Watertower agreed to pay Borrowman a lump sum of $230,000. The settlement agreement was prepared by Gary J. Ferrari, an attorney for Travelers Insurance Company, Watertower's insurance carrier. Ferrari also prepared a separate addendum attached to the agreement, which set forth more specific terms of the agreement as follows:

> "The above constitutes a full, final[,] and complete settlement of any and all claims for temporary total disability, permanent partial and/or permanent total disability incurred or to be incurred by said [p]etitioner by reason of an industrial injury occurring on or about April 7, 1995, or by reasons of any claim or cause of action by [p]etitioner against [r]espondent of any nature whatsoever. Rights under [s]ections 8(a) and 19(h) of the \*\*\* Act are hereby waived by both parties."

The agreement was signed by all parties and approved by the Illinois Industrial Commission on January 7, 2000.

The agreement does not refer to, or contain any reservation of rights (or waiver) with regard to, plaintiff's then-pending malpractice action. Watertower cannot attribute this silence to its lack of knowledge of the pending action because the record reveals that in October 1998 in the malpractice action, VNA filed a notice that it intended to depose a representative of Travelers (Watertower's insur-

ance carrier). In all fairness to Watertower, it does not assert that it was not aware of Borrowman's malpractice action.

■ Because Watertower was aware of Borrowman's allegations against Dr. Prastein and the VNA, it is reasonable to conclude, by the lack of any reference thereto, that Watertower forfeited its lien rights in its "full, final[,] and complete settlement" with Borrowman. It is also reasonable to assume, due to the fact it was not mentioned in the agreement, Watertower's claim of a potential lien was not an issue during the negotiations surrounding the workers' compensation settlement. We find nothing in the record to refute the fact that all concerned negotiated and bargained (1) in good faith and (2) with full knowledge of the then-current circumstances and their impendent rights.

For this court to hold that Watertower was entitled to a lien against Borrowman's malpractice settlement proceeds when Watertower (1) failed to reserve its right in its workers' compensation settlement with Borrowman and (2) knew of the pending malpractice action at the time would completely nullify both parties' good-faith dealings. Such a holding would have Borrowman return to Watertower the money that Watertower previously agreed to give Borrowman without a change in circumstances. It would not only belie Illinois's public policy of encouraging settlements (see *In re Guardianship of Babb*, 162 Ill. 2d 153, 169, 642 N.E.2d 1195, 1202 (1994)) but would effectively serve as a repudiation of the agreement. We hold that Watertower should be bound by the terms of its agreement and is not entitled to a section 5(b) lien on the malpractice case.

We are mindful that the supreme court has stated the clear purpose of section 5(b) is to protect the employer and that duty rests with the trial court. *Freer v. Hysan Corp.*, 108 Ill. 2d 421, 426, 484 N.E.2d 1076, 1079 (1985); see also *Blagg v. Illinois F.W.D. Truck & Equipment Co.*, 143 Ill. 2d 188, 194, 572 N.E.2d 920, 923 (1991) (the employer's right to reimbursement is to be protected by the court). However, the supreme court's holdings in *Freer* and *Blagg* were premised on the notion that it was unfair for an employee to manipulate a settlement with a third party in a manner that would circumvent the employer's workers' compensation lien. Such is not the case here. Watertower negotiated and signed *the settlement agreement* with Borrowman with full knowledge of the pending malpractice action. "The Act cannot be read to require the court to step in under these circumstances to save [Watertower] from itself." *Sheppard v. Rebidas*, 354 Ill. App. 3d 330, 335, 820 N.E.2d 1089, 1094 (2004) (First District).

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order granting Watertower a section 5(b) (820 ILCS 305/5(b) (West 2002)) lien against Borrowman's medical malpractice proceeds.

Reversed.

STEIGMANN and KNECHT, JJ., concur.