THIRD DIVISION
August 30, 2006

No. 1-06-0065

| | | |
|---|---|---|
| JAMES GALLAGHER and MICHELLE GALLAGHER, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiffs-Appellees, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| JAROSLAW ROBERT LENART, Individually, and as | ) | |
| agent for Pacella Trucking Express, Inc., and | ) | |
| PACELLA TRUCKING EXPRESS, INC., an Illinois | ) | No. 01 L 62055 |
| Corporation, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (Rail Terminal Services, LLC, | ) | Honorable |
| | ) | Mary K. Rochford, |
| Intervenor-Appellant). | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

Plaintiffs James and Michelle Gallagher brought suit against defendants Jaroslaw Robert

Lenart, individually, and as agent for Pacella Trucking Express, Inc., and Pacella Trucking

Express, Inc., an Illinois corporation (collectively, defendants), for personal injuries James

sustained in a motor vehicle collision with Lenart. After that case settled, intervenor Rail

Terminal Services, LLC (Rail Terminal), James' employer, was granted leave to intervene and

sought to enforce its workers' compensation lien created pursuant to the Workers' Compensation

Act (820 ILCS 305/5(b) (West 2004)) (the Act), against the settlement proceeds allocated to

James. The trial court found that Rail Terminal had waived its lien pursuant to Borrowman v.

Prastein, 356 Ill. App. 3d 546, 826 N.E.2d 600 (2005), and granted defendants' motion to

adjudicate any third-party claims and to issue settlement drafts. On appeal, Rail Terminal contends that the trial court erred in holding that it did not have a valid workers' compensation lien and in granting defendants' motion to adjudicate any third-party claims. For the following reasons, we reverse and remand for further proceedings.

On April 10, 2001, James, an employee of Rail Terminal, was operating a small truck in the scope of his employment when he was hit by a truck driven by Lenart. At that time, Lenart was an employee of Pacella Trucking Express, Inc., and was delivering a container to Rail Terminal's premises. James sustained injuries to his spine as a result of the accident, which required surgery and pain medication and caused him to miss many weeks of work.

Following the accident, James filed a claim for workers' compensation benefits under the Act against Rail Terminal. Rail Terminal and James settled this claim in July 2003 for $150,000. That settlement provided in relevant part:

> "Respondent [Rail Terminal] to pay the petitioner [James] $150,000.00 in full and final settlement of all claims under the Workers' Compensation Act for injuries incurred on or about April 10, 2001 and any and all results, developments or sequale, past, present or future resulting from this accident. Respondent denies these injuries are compensable and this settlement is made to settle those issues as a purchase of the peace against any an[d] all claims for additional temporary total compensation, permanent partial disability and medical, surgical [or] hospital expenses, past, present or future. Review under Sections 19(h) and 8(a) [is] waived by the petitioner."

On November 21, 2001, James filed this personal injury action against defendants. In the amended complaint, James sought damages for his injuries and Michelle raised a loss of consortium claim. In November 2003, defendants filed a third-party action against Rail Terminal, alleging that Rail Terminal failed to properly train and supervise James and seeking contribution pursuant to the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2004)). Rail Terminal filed a motion for summary judgment on the third-party complaint, arguing that it did not fail to supervise or train James and that no additional supervision or training would have prevented this accident. The trial court granted Rail Terminal's motion for summary judgment in July 2005.

On September 16, 2005, the parties settled this case. Specifically, defendants paid $225,000 to Michelle for her loss of consortium claim and $125,000 to James for his personal injury claim. On September 23, 2005, Rail Terminal filed a petition to intervene in this personal injury case "for the purpose of protecting its Worker's [*sic*] Compensation lien" and a motion to set aside the allocation and to reallocate James' settlement with defendants. In these motions, Rail Terminal alleged that it had paid temporary total disability benefits to James in the amount of $24,903.51 and medical expenses in the amount of $53,392.21 as part of James' workers' compensation benefits. Further, Rail Terminal stated that it had settled James' claim for permanent partial disability for $150,000. Thus, the total amount of Rail Terminal's workers' compensation lien was $228,295.72.

Rail Terminal also stated that a settlement between plaintiffs and defendants was reached on September 16, 2005, and that Rail Terminal did not participate in or approve of that

3

settlement. It further claimed that since James received $125,000, he had received only 35.7% of the $350,000 settlement whereas Michelle had received 64.3% of the settlement for her loss of consortium claim. Rail Terminal alleged that plaintiffs structured the settlement in this way to circumvent Rail Terminal's workers' compensation lien. With these two motions, Rail Terminal sought to intervene in the personal injury suit and reallocate the settlement so as to recover the full amount of its lien.

On October 7, 2005, defendants filed a motion to adjudicate any third-party claims and to issue settlement drafts. Citing Borrowman v. Prastein, 356 Ill. App. 3d 546, 826 N.E.2d 600 (2005), defendants argued that because of certain language in the settlement of James' workers' compensation claim with Rail Terminal, Rail Terminal had waived its workers' compensation lien. Plaintiffs joined in this motion. Rail Terminal responded, arguing that the language of the workers' compensation claim settlement agreement did not indicate that Rail Terminal had intentionally waived its right to assert its lien. Rail Terminal attached affidavits from one of its attorneys and several insurance personnel who were involved in settling James' workers' compensation case. These witnesses averred that Rail Terminal never agreed or intended to waive its workers' compensation lien and that both plaintiffs' and defendants' counsel knew of this intention. Further, one witness stated that it was not customary to waive an employer's right to recover its lien as part of negotiations for settlement of a workers' compensation claim and that if such a waiver was contemplated, a provision expressly memorializing such waiver would be included in any settlement contract.

On December 13, 2005, the trial court granted Rail Terminal's petition to intervene.

4

Additionally on December 13, the trial court granted defendants' motion to adjudicate third-party liens, finding that Rail Terminal did not have a lien under <u>Borrowman</u>. The court denied Rail Terminal's motion to set aside the settlement agreement and reallocate, finding that it did not need to reach that issue. Rail Terminal then filed this timely appeal.

Rail Terminal argues that it is entitled to a lien under section 5(b) of the Act (820 ILCS 305/5(b) (West 2004)) and that the trial court erred in finding that it had waived its workers' compensation lien by not specifically reserving it in the settlement of James' workers' compensation claim. In its argument, Rail Terminal contends that <u>Borrowman v. Prastein</u>, 356 Ill. App. 3d 546, 826 N.E.2d 600 (2005), the sole case upon which the trial court relied in making its finding, is distinguishable and poorly reasoned and urges this court to reject it. Plaintiffs and defendants respond that <u>Borrowman</u> was correctly decided and that the trial court properly relied on that case in finding that Rail Terminal had waived its lien.

A detailed discussion of <u>Borrowman</u> is necessary to this case. Plaintiff Charles Borrowman fractured his heel in April 1995 while working for his employer, intervenor Watertower Paint & Repair Company (Watertower). <u>Borrowman</u>, 356 Ill. App. 3d at 547, 826 N.E.2d at 601. Borrowman then filed for workers' compensation benefits against Watertower. Defendant Dr. Rebeccah Prastein performed surgery to repair his fracture. Soon thereafter, Borrowman developed an infection in his heel which Dr. Prastein treated with antibiotics. After the infection cleared, Borrowman experienced a severe earache, hearing loss, dizziness and balance problems, which were later attributed to the antibiotics. <u>Borrowman</u>, 356 Ill. App. 3d at 547, 826 N.E.2d at 601.

In October 1997, Borrowman filed a medical malpractice suit against Dr. Prastein for damages he sustained from the antibiotics. On January 7, 2000, pursuant to a settlement contract, Borrowman and Watertower settled Borrowman's workers' compensation claim for $230,000. In February 2001, Borrowman filed a petition to adjudicate Watertower's claim for a workers' compensation lien. Borrowman, 356 Ill. App. 3d at 547, 826 N.E.2d at 602. In July 2001, Borrowman settled his medical malpractice case for $750,000. Borrowman again filed a petition to adjudicate Watertower's lien. The parties engaged in discovery and held a hearing where witnesses testified as to the amount of Watertower's lien based on how much of the workers' compensation benefits were attributable to the medical malpractice. The trial court held that Watertower was entitled to a lien on Borrowman's medical malpractice settlement of $175,973.71. Borrowman, 356 Ill. App. 3d at 548, 826 N.E.2d at 602.

On appeal, Borrowman argued that Watertower was not entitled to a lien, or in the alternative, was entitled to a smaller lien. The opinion does not indicate the basis for Borrowman's argument. Watertower argued that it was entitled to a larger lien than the amount awarded. The appellate court stated that the pivotal issue was whether Watertower was entitled to a lien under section 5(b) of the Act when it agreed to settle its claims with Borrowman knowing a medical malpractice case was pending. Borrowman, 356 Ill. App. 3d at 548, 826 N.E.2d at 602. The Borrowman court then discussed the two cases cited by Watertower in support of its argument for a larger lien, Robinson v. Liberty Mutual Insurance Co., 222 Ill. App. 3d 443, 584 N.E.2d 182 (1991), and Kozak v. Moiduddin, 294 Ill. App. 3d 365, 689 N.E.2d 217 (1997). The court distinguished those cases because Robinson did not involve a workers'

compensation settlement and the employer in Kozak settled the plaintiff's workers' compensation claim before it knew of the medical malpractice allegations.

The Borrowman court then noted that Watertower and Borrowman had settled his workers' compensation claim while Borrowman's medical malpractice claim was pending. The court cited language from that settlement agreement and found that, although Watertower knew of the pending malpractice action, the settlement agreement did "not refer to, or contain any reservation of rights (or waiver) with regard to, plaintiff's then-pending malpractice action." Borrowman, 356 Ill. App. 3d at 550, 826 N.E.2d at 604. The court then held, "[b]ecause Watertower was aware of Borrowman's allegations against Dr. Prastein ***, it is reasonable to conclude, by the lack of any reference thereto, that Watertower forfeited its lien rights in its 'full, final[,] and complete settlement' with Borrowman." Borrowman, 356 Ill. App. 3d at 551, 826 N.E.2d at 604. The court then stated that it was also "reasonable to assume, due to the fact it was not mentioned in the agreement, Watertower's claim of a potential lien was not an issue during the negotiations surrounding the workers' compensation settlement." Borrowman, 356 Ill. App. 3d at 551, 826 N.E.2d at 604. Lastly, the court held that "Watertower should be bound by the terms of its agreement and is not entitled to a section 5(b) lien on the malpractice case." Borrowman, 356 Ill. App. 3d at 551, 826 N.E.2d at 605. Thus, Borrowman holds that an employer forfeits or waives its workers' compensation lien by not specifically reserving it in a settlement of the employee's workers' compensation claim when the employer knew of the employee's pending claim against a third-party tortfeasor.

We find this holding unsupported by case law, contrary to several principles behind the

7

1-06-0065

Act, and at odds with general contract law. Accordingly, we reject it. First, Borrowman provides no support for its analysis. Contrary to defendants' contention, Borrowman did not base its decision on Kozak or Robinson. Rather, the Borrowman court merely distinguished those cases that Watertower had cited in support of its argument for a greater lien award. Neither party had cited Kozak or Robinson for the proposition that Watertower was not entitled to a lien at all. In fact, in both Kozak and Robinson, none of the parties argued that the employers were not entitled to workers' compensation liens. In Robinson, the parties merely disputed the amount of the lien the employer would receive, while in Kozak, the plaintiffs argued that the employer was judicially estopped from asserting its otherwise valid lien because it took an inconsistent position in a third-party lawsuit, an argument which the court rejected. Kozak, 294 Ill. App. 3d at 367, 689 N.E.2d at 219; Robinson, 222 Ill. App. 3d at 446, 584 N.E.2d at 183. Further, even if the Borrowman court relied on Kozak and Robinson, neither of these cases discusses a workers' compensation settlement agreement, and, thus, they do not support Borrowman's holding that an employer waives it workers' compensation lien by failing to expressly reserve it in a settlement.

Second, the Borrowman holding is contrary to several principles behind the Act. An employer's workers' compensation lien is created by statute, section 5(b) of the Act, which provides in pertinent part:

"Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal

8

proceedings may be taken against such other person to recover damages

notwithstanding such employer's payment of or liability to pay compensation

under this Act. In such case, however, if the action against such other person is

brought by the injured employee or his personal representative and judgment is

obtained and paid, or settlement is made with such other person,*** then from the

amount received by such employee or personal representative there shall be paid

to the employer the amount of compensation paid or to be paid by him to such

employee or personal representative including amounts paid or to be paid

pursuant to paragraph (a) of Section 8 of this Act." 820 ILCS 305/5(b) (West

2004).

This provision grants the employer a statutory lien on any recovery the employee receives from a

liable third party equal to the amount of the workers' compensation benefits paid or owed the

employee. In re Estate of Dierkes, 191 Ill. 2d 326, 328, 730 N.E.2d 1101, 1102 (2000). An

employer's reimbursement of workers' compensation payments from an employer's third-party

recovery is crucial to the workers' compensation scheme. Dierkes, 191 Ill. 2d at 331, 730 N.E.2d

at 1104. The Act is primarily meant to provide prompt and equitable compensation for

employees who are injured while working, regardless of fault. An employer may therefore be

required to pay compensation even though the employer was without fault. Dierkes, 191 Ill. 2d

at 331, 730 N.E.2d at 1104. However, section 5(b) allows the employer and employee to reach

the true tortfeasor. Dierkes, 191 Ill. 2d at 331-32, 730 N.E.2d at 1104. Thus, the Act accords

with " 'the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer.' "

1-06-0065

Dierkes, 191 Ill. 2d at 332, 730 N.E.2d at 1104, quoting 6 A. Larson & L. Larson, Larson's Workers' Compensation Laws § 110.01, at 110-2 (1999).

Additionally, another purpose of section 5(b) is to prevent the employee from obtaining a double recovery. Scott v. Industrial Comm'n, 184 Ill. 2d 202, 217, 703 N.E.2d 81, 88 (1998); Kozak, 294 Ill. App. 3d at 369, 689 N.E.2d at 221. The purpose of compensatory tort damages is to compensate the plaintiff for his injuries, not to punish defendant or confer a windfall upon plaintiffs. Wilson v. Hoffman Group, Inc., 131 Ill. 2d 308, 321, 546 N.E.2d 524, 530 (1989). It is

> " 'elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse it for its compensation outlay, and to give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he or she would normally pay ***; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone.' " Dierkes, 191 Ill. 2d at 332, 730 N.E.2d at 1104, quoting 6 A. Larson & L. Larson, Larson's Workers' Compensation Laws § 110.02, at 110-3 to 110-4 (1999).

Thus, Illinois law is clear that the employee is entitled to retain only that portion of a recovery from the tortfeasor which exceeds the workers' compensation benefits he received from his

employer.  <u>Dierkes</u>, 191 Ill. 2d at 332, 730 N.E.2d at 1104; <u>Eastman v. Messner</u>, 188 Ill. 2d 404, 412, 721 N.E.2d 1154, 1158 (1999).  Moreover, an employee is obligated to reimburse the employer for the full amount of its workers' compensation payments, regardless of the amount that the employee recovers.  If the amount of compensation benefits exceeds the employee's third-party recovery, the employer is entitled to the entire recovery, less fees and costs.  <u>Dierkes</u>, 191 Ill. 2d at 333, 730 N.E.2d at 1105.

Further, any judgment or settlement received from the third party must be offset by the amount of workers' compensation benefits received, even when the employer has waived the right to assert its workers' compensation lien.  <u>Eastman</u>, 188 Ill. 2d at 412-13, 721 N.E.2d at 1159; <u>Wilson</u>, 131 Ill. 2d at 322, 546 N.E.2d at 530-31.  Thus, public policy and supreme court case law prohibit an employee from receiving a double recovery.  Therefore, an employee may receive only workers' compensation benefits from his employer and the remainder of any third-party recovery after the workers' compensation benefits have been either repaid to the employer or set off against the recovery.

Section 5(b) further provides that the employer may, at any time after the filing of the third-party action, "join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection."  820 ILCS 305/5(b) (West 2004).  Thus, " '[t]he plain meaning of section 5(b) imposes the duty of protecting the employer's lien upon the   court.' " <u>Scott</u>, 184 Ill. 2d at 217, 703 N.E.2d at 88, quoting <u>Freer v. Hysan Corp.</u>, 108 Ill. 2d 421, 426, 484 N.E.2d 1076, 1079 (1985).  Our supreme court has repeatedly stated that " '[i]t is of utmost importance that the trial court protect an employer's [workers' compensation] lien.' " <u>Dierkes</u>,

191 Ill. 2d at 333, 730 N.E.2d at 1105, quoting Blagg v. Illinois F.W.D. Truck & Equipment Co., 143 Ill. 2d 188, 195, 572 N.E.2d 920, 924 (1991).

Under this scheme, the Act and the courts protect the employer's right to reimbursement of the amount of workers' compensation benefits it paid to the employee. See Freer, 108 Ill. 2d at 426, 484 N.E.2d at 1079; Insurance Co. of North America v. Andrew, 206 Ill. App. 3d 515, 519, 564 N.E.2d 939, 941-42 (1990). Thus, Borrowman's holding that an employer waives or forfeits its workers' compensation lien by not specifically reserving it in a settlement of the employee's workers' compensation claim when the employer knew of a pending claim against a third-party tortfeasor contravenes the Act's purposes.

Further, Borrowman's holding contradicts general principles of contract law. The agreement at issue in Borrowman and in this case, is a settlement contract between the employer and employee which settled the employee's workers' compensation claim. Settlement agreements are construed and enforced under principles of contract law. Swiatek v. Azran, 359 Ill. App. 3d 500, 503, 834 N.E.2d 602, 604 (2005). The interpretation of a contract is a question of law, which we review *de novo*. K's Merchandise Mart, Inc. v. Northgate Ltd. Partnership, 359 Ill. App. 3d 1137, 1142, 835 N.E.2d 965, 970 (2005). The primary objective when construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract. K's Merchandise Mart, Inc., 359 Ill. App. 3d at 1142, 835 N.E.2d at 970. The plain language used in the contract is generally the best indication of the parties' intent. K's Merchandise Mart, Inc., 359 Ill. App. 3d at 1142, 835 N.E.2d at 971. A written contract is presumed to include all material terms agreed upon by the parties. K's Merchandise Mart, Inc.,

1-06-0065

359 Ill. App. 3d at 1142, 835 N.E.2d at 971.  Extrinsic evidence of antecedent negotiations and

understandings is generally inadmissible to alter, vary or contradict the written instrument.  K's

Merchandise Mart, Inc., 359 Ill. App. 3d at 1143, 835 N.E.2d at 971.

*Additionally, a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.* 12A Ill. L. Prac. Contracts § 233 1983 . *A presumption exists against provisions that easily could have been included in the contract but were not.* Lee v. Allstate Life Insurance Co., 361 Ill. App. 3d 970, 979, 838 N.E.2d 15, 24 2005 . *Further, where a contract purports on its face to be a complete expression of the entire agreement, courts will not add another term about which the agreement is silent.* Pritchett v. Asbestos Claims Management Corp., 332 Ill. App. 3d 890, 897, 773 N.E.2d

1277, 1282 (2002).

With its holding, Borrowman contradicts these principles.  The settlement agreement in

Borrowman, like the agreement in the present case, does not contain any reference to the

employer's workers' compensation lien and specifically, does not include a waiver of that lien.

Based on the general contract principles cited above, the court should presume that if the

employer meant to waive its statutorily-created lien as part of the settlement of the employee's

workers' compensation claim, it would have specifically included such a waiver in the settlement

agreement.  Borrowman's holding instead rewrites the contract, which was negotiated by lawyers

representing both parties, and adds a provision which the parties did not include.  The plain

language of the settlement agreement indicates that the parties did not intend to resolve the issue

13

of the employer's workers' compensation lien within that settlement. The Borrowman court

assumed, without any basis, that the agreement's silence on the issue of the workers'

compensation lien meant that the employer chose to waive that lien and its right to recover

hundreds of thousands of dollars from any future third-party recovery by the employee. Such an

assumption contravenes well-established contract law in Illinois.

Further, waiver is the voluntary and intentional relinquishment of a known right by

conduct inconsistent with an intent to enforce that right. R & B Kapital Development, LLC v.

North Shore Community Bank & Trust Co., 358 Ill. App. 3d 912, 922, 832 N.E.2d 246, 255

(2005). The absence of any reference to an employer's lien in a settlement agreement, without

more, cannot constitute such a voluntary and intentional relinquishment of that right.

We acknowledge that employers can, and sometimes do, choose not to seek

reimbursement of their workers' compensation benefits and waive their liens. See LaFever v.

Kemlite Co., 185 Ill. 2d 380, 399, 706 N.E.2d 441, 451 (1998). For example, an employer may

waive a section 5(b) lien to avoid liability for contribution to the other tortfeasors allegedly

responsible for the employee's injury because, under Kotecki v. Cyclops Welding Corp., 146 Ill.

2d 155, 585 N.E.2d 1023 1991 , an employer's liability in contribution is limited to

the amount of its workers' compensation liability. LaFever, 185 Ill. 2d at 399, 706

N.E.2d at 451. Further, an employer may also waive its lien to avoid paying its share of attorney fees

and costs under section 5 b . LaFever, 185 Ill. 2d at 400, 706 N.E.2d at 452.

However, based upon the protections of the Act and general contract principles, such a waiver of a

workers' compensation lien must be more explicitly and affirmatively stated in a settlement

14

agreement and cannot simply be implied by a lack of any reference to that lien.

Accordingly, we reject Borrowman and decline to follow it. In this case, Rail Terminal's settlement of James' workers' compensation claim did not include any mention or waiver of Rail Terminal's workers' compensation lien. Thus, we find that Rail Terminal had a valid workers' compensation lien and that it did not waive or forfeit this lien by failing to specifically reserve it in its settlement. Therefore, we reverse the trial court's ruling to the contrary.

Rail Terminal also asks this court to reverse the trial court's denial of its motion to set aside the allocation of plaintiffs' settlement with defendants and to reallocate that settlement. Specifically, Rail Terminal urges us to apportion at least $228,295.72 of the $350,000 settlement to James in order to allow Rail Terminal to fully recover its workers' compensation lien. However, although the trial court denied this motion, it specifically stated at the hearing that it did not need to address the issue of reallocation based on its ruling that Rail Terminal did not have a valid lien. Therefore, we decline to reallocate the settlement for the first time on appeal and remand this case to the trial court to make this determination in light of this opinion.

Accordingly, we reverse the trial court's finding that Rail Terminal had waived its workers' compensation lien and its order granting defendants' motion to adjudicate third-party liens and to issue settlement drafts and remand this case for further proceedings.

Reversed and remanded.

HOFFMAN, P.J., and KARNEZIS, J., concur.

15

JAMES GALLAGHER and MICHELLE GALLAGHER,

    Plaintiffs-Appellees,

    v.

JAROSLAW ROBERT LENART, individually, and as agent for PACELLA TRUCKING EXPRESS, INC., PACELLA TRUCKING EXPRESS, INC., an Illinois Corporation,

    Defendants-Appellees,

    (RAIL TERMINAL SERVICES, LLC,

    Intervenor-Appellant).

---

**No. 1-06-0065**

Appellate Court of Illinois
First District, Third Division

Filed: August 30, 2006

---

**JUSTICE THEIS delivered the opinion of the court.**

Hoffman, P.J., and Karnezis, J., concur.

---

Appeal from the Circuit Court of Cook County
Honorable Mary K. Rochford, Judge Presiding

---

For APPELLANT       William P. Ryan
                    Terry L. Welch
                    Marwedel, Minichello and Reeb, P.C.
                    10 S. Riverside Plaza, Suite 720
                    Chicago, IL 60606

For PLAINTIFFS-    Michael W. Rathsack
APPELLEES    111 W. Washington St., Suite 962
                    Chicago, IL 60602

For DEFENDANTS-David E. Neumeister
APPELLEES    Larry S. Kowalczyk
                    Querrey & Harrow, Ltd.

**175 W. Jackson Blvd., Suite 1600**
**Chicago, IL 60604**

**175 W. Jackson Blvd., Suite 1600**
**Chicago, IL 60604**